SAM GOULD v. CHICAGO, BURLINGTON & QUINCY RAILROAD COMPANY,.
Appellant.

Division Two, August 16, 1926.

**1. NEGLIGENCE: Humanitarian Rule: Sounding Whistle: Case for Jury.**
Assuming that plaintiff, a guard on a railroad bridge, was guilty of con-
tributory negligence, a case was made for the jury under the humanitarian
rule by (a) the testimony of the engineer of defendant's train approach-
ing the bridge that, when two car-lengths from the bridge, he saw plaintiff
sitting on a timber or guard rail beside and about two feet from the track
rail and leaning over towards the track, that he sounded the whistle from
seven to a dozen times, and that by a mere raising of his body to an
upright position plaintiff would have avoided being struck, and by (b) the
testimony of plaintiff's witnesses that the whistle was not blown nor the
bell rung; for the testimony of the engineer, and the testimony of the other
witnesses, when taken together, tend to prove that the engineer saw plain-
tiff in a position of peril and oblivious to such peril, and thereafter failed
to sound a warning to notify him of his peril in time to enable him to avoid
being struck when a suitable warning could have been given.

**2. ———: ———: Defendant's Evidence: Acceptance in Part.**   The jury
may believe all the testimony of any witness, or none of it, or may accept it
in part, or reject it in part, just as they find it to be true or false when con-
sidered in connection with other testimony and the facts and circumstances
of the case.   The plaintiff is entitled, in support of a verdict in his favor, to
take the benefit of the testimony of defendant's engineer that he saw the
plaintiff in a position of peril when the locomotive was two car-lengths
away from him, without accepting as true the engineer's testimony that
he thereafter caused seven to a dozen sharp blasts of the whistle to be
given.   The jury was authorized, as a basis of their verdict for plaintiff up-
on the humanitarian ground pleaded, to accept as true the engineer's testi-
mony that he actually saw plaintiff in time to warn him of his danger, and
reject the rest of his testimony that timely and sufficient warning was given.

**3. ———: ———: Obliviousness.**   If plaintiff was asleep upon the track
as the train approached, that fact only establishes his utter obliviousness to
danger, and does not prevent him from recovering for his injuries under the
humanitarian doctrine.

**4. INSTRUCTION: Timely Warning.**   An instruction requiring the jury
to find that the giving of timely warning, if it was not given, would have
enabled the engineer to avoid striking plaintiff, is equivalent to a require-
ment that the jury find that, by the sounding of the whistle, plaintiff would
have been able to remove himself from the path of the engine in time to
avoid being struck.

**5. ———: Soldier Guarding Bridge: Section-Hand Rule: Ordinary Care:
Harmless Error.**   In an action grounded on the humanitarian doctrine, it is

wholly unnecessary to decide whether the section-hand rule, requiring a section hand to look out for his own safety, is to be applied to a soldier assigned to guard a bridge against the approach of persons who might attempt to destroy or injure it, where the engineer of defendant's train positively testifies that he saw the soldier sitting in a position of danger near the track while the engine was two car-lengths away from him; for even if the section-hand rule is applicable to the soldier plaintiff, an instruction submitting the question whether the engineer, by the exercise of ordinary care, could have seen plaintiff in a position of peril, is harmless, and a harmless instruction is not error.

6. ———: **Contributory Negligence: Humanitarian Rule.** Contributory negligence is not a defense to a cause of action grounded on the humanitarian rule, and therefore an instruction precluding the jury from basing a verdict upon plaintiff's contributory negligence is not error.

7. **EVIDENCE: Custom: Cured by Instruction.** Where the petition pleaded a custom of blowing the whistle of trains approaching the bridge and plaintiff's reliance upon such custom, if it was error to admit evidence tending to prove the custom, on the ground that the whistle was for a curve or crossing and for a draw on the bridge and not for plaintiff, all such error was cured by an instruction telling the jury that "all grounds of negligence save the one submitted to you in Instruction 1 are withdrawn from your consideration," said Instruction 1 aptly basing plaintiff's right to recover under the humanitarian rule, and said instruction likewise withdrew every other ground of negligence not referred to in said Instruction 1.

8. ———: **Injury to Soldier Guarding Bridge: Passes to Pedestrians: Duty to Look out.** In the trial of an action for injury to a soldier guarding a railroad bridge, based on the humanitarian doctrine, evidence tending to prove that individuals used the bridge by virtue of passes granted to them by the officer in command of the soldiers guarding the bridge, introduced for the purpose of charging the defendant and the engineer of its approaching train with notice that persons were likely to be on the bridge and of their duty to be on the lookout for them, if erroneously admitted, was harmless, in view of the testimony of the engineer that he saw plaintiff in a position of peril and apparently oblivious of the peril.

9. **EXCESSIVE VERDICT: Fifteen Thousand Dollars.** A verdict for fifteen thousand dollars is not excessive where plaintiff, a healthy young man, was struck by defendant's engine on the left side of the head, and as a result, six years later, he has a staggering gait, dizziness, double vision, headaches, the left side of his face is paralyzed, his left arm and leg are weak, his mental condition and memory are bad, he is deaf in his left ear, has only about fifty per cent vision, is incapacitated to pursue gainful occupations and these conditions are permanent.

10. **SOLDIER: Personal Injuries: War Risk Insurance Act: Right of Action: Assignment to Government.** Under the War Risk Insurance Act a right of action for damages for personal injuries received by a soldier in a railroad accident does not stand assigned to the United States as a matter of law, but even if it did he is entitled to the excess of damages paid or recovered over the compensation actually paid and the costs of collection, and therefore has a substantial interest in the right of action, and is entitled to maintain the suit in his own name as the real party in interest; and especially so, where there is no evidence that, as a condition to the payment of compensation, the Director General required him to assign his right of action, and the compensation actually paid was $2000 and the verdict and judgment are for $15,000.

11. ———: ———: ———: **Real Party in Interest: Unavailing to Tortfeasor.** The mere fact that the Government is entitled to claim a portion or

all of the proceeds of a suit to enforce a soldier's right of action for damages for personal injuries negligently inflicted by a defendant railroad, does not permit defendant to avail itself of the defense that plaintiff is not the real party in interest.

**12. CONSTITUTIONAL QUESTION: War Risk Insurance Act: First Opportunity.** A constitutional question must be raised at the first opportunity and kept alive during the trial. Where the defendant in its answer pleads that the United States is the real party in interest and discloses full knowledge on its part of the interest of the Government in any judgment recovered under the War Risk Insurance Act, its attempt in its motion for a new trial to raise the constitutionality of the act comes too late.

**13. ———: ———: Raised by Tortfeasor.** Unless the alleged unconstitutionality of a statute affects the right or property of a party, he cannot challenge its constitutionality. When a railroad company is sued by a soldier for the damages resulting from his negligent personal injuries, the defendant is not entitled to challenge the constitutionality of those parts of the War Risk Insurance Act which undertake to control, direct and compel the prosecution of plaintiff's cause of action and take an assignment thereof to the United States.

**14. NEGLIGENCE: Contributory: Humanitarian Rule: Peril Seen.** Notwithstanding it was plaintiff's duty to be on guard at all times and to observe the approach of a train to the bridge he was set to guard, and although he was negligent in not observing its approach, his negligence in those respects will not defeat his right to recover under the humanitarian rule, if defendant's engineer saw him in a position of peril and oblivious of such peril and failed to give him suitable warning when such warning could have been given; and where there is substantial evidence supporting all these conditions, the judgments for plaintiff, in the absence of error in the instructions and of other procedural errors, will be affirmed.

Corpus Juris-Cyc. References: **Appeal and Error,** 4 C. J., Section 2961, p. 982, n. 44; Section 3013, p. 1029, n. 30. **Army and Navy,** 5 C. J., Section 119a, p. 340, n. 97 New. **Constitutional Law,** 12 C. J., Section 177, p. 760, n. 57; Section 217, p. 785, n. 63; p. 786, n. 69 New. **Damages,** 17 C. J., Section 408, p. 1091, n. 85. **Parties,** 30 Cyc., p. 78, n. 66. **Railroads,** 33 Cyc., p. 830, n. 19; p. 855, n. 68; p. 856, n. 71, 73; p. 903, n. 33; p. 911, n. 84; p. 915, n. 13; p. 920, n. 46. **Trial,** 38 Cyc., p. 1521, n. 86, 88; p. 1784, n. 87.

Appeal from Jackson Circuit Court.—*Hon. Samuel A. Dew,* Judge.

AFFIRMED.

*H. J. Nelson* and *Langworthy, Spencer & Terrell* for appellant.

(1) The court committed error in overruling the defendant's objection to the introduction of any testimony and in overruling the defendant's demurrer to the plaintiff's evidence and in refusing to give the peremptory instruction requested by the defendant at the close of the entire case. (a) Under the pleadings, the opening statement of counsel and under the evidence there is no room for the application of the humanitarian doctrine on which the case was submitted and it appears as a matter of law that the plaintiff's injuries were the direct result of his own negligence. The plaintiff was stationed at the entrance of the bridge and had the sole duty of keeping on a constant lookout for anything or any person that might

come on the bridge and was required to be on the alert at all times and to use his eyes and ears in order to observe anything approaching from any direction. These were his sole duties and there was nothing else to require his attention. The day was bright and clear and there was no noise. Under well-recognized principles of law he should be denied recovery as a matter of law. Degonia v. Railroad, 224 Mo. 591; Gabel v. Railroad, 251 Mo. 268; State ex rel. v. Ellison, 271 Mo. 463; Nivert v. Railroad, 232 Mo. 641; Clancy v. Transit Co., 192 Mo. 615; Van Dyke v. Railroad, 230 Mo. 286; Sissel v. Railroad, 214 Mo. 526; Radcliffe v. Railroad (C. C. A. 4th Cir.), 271 Fed. 304; Hearell v. Railroad, 213 S. W. 561; Blancke v. Railroad, 133 N. E. 484; Olsen v. Payne, 199 Pac. 757. (b) There was no duty on the part of the engineer to keep a lookout for plaintiff. but even if there was it appears conclusively that the engineer could not possibly have seen plaintiff until he was within approximately one hundred and fifty feet and the pilot of the engine was within a little over one hundred feet; that at the rate at which the train was traveling he would not have had more than three to five seconds in which to observe plaintiff's position and to apply the brakes and sound the whistle. The physical facts demonstrate that it was utterly impossible for the engineer to have avoided striking plaintiff, and that plaintiff's case is based upon sheer conjecture. Nivert v. Railroad, 232 Mo. 639; McGee v. Ry., 214 Mo. 542; Markovitz v. Railroad, 186 Mo. 350; Young v. Railroad, 227 Mo. 331; White v. Railroad, 159 Mo. App. 508. (2) The court committed error in giving the jury plaintiff's Instruction 1. The instruction was intended to cover the entire case, and was erroneous for at least three reasons: (a) It is directly contrary to the physical facts and is based upon conjecture and is highly misleading as to the very question intended to be submitted. Nivert v. Railroad, 232 Mo. 639; McGee v. Ry., 214 Mo. 542; Markovitz v. Railroad, 186 Mo. 359; Young v. Railroad, 227 Mo. 331; White v. Railroad, 159 Mo. App. 508. The instruction wholly fails to submit the question whether by the sounding of the whistle the plaintiff would have been able to have removed himself from the path of the engine. This was the very crux of plaintiff's case and if the question was to be submitted to the jury at all it was error not to submit the question in clear and unmistakable language. Kinlen v. Railroad, 216 Mo. 164. (b) Under the law the engineer was not required to keep a lookout for the plaintiff and it was error to submit the question of whether by the exercise of ordinary care he should have seen the plaintiff in a position of peril. Degonia v. Railroad, 224 Mo. 591; State ex rel. v. Ellison, 271 Mo. 468; Frye v. Railroad, 200 Mo. 405; Rashall v. Railroad, 49 Mo. 509; Nivert v. Railroad, 232 Mo. 639. (c) The concluding sentence of the instruction excludes the possibility of

the jury finding the plaintiff guilty of concurrent negligence, which under the particular facts in this case was particularly prejudicial. Laughlin v. Railroad, 144 Mo. App. 197.   (3)   The court committed error in admitting evidence to the effect that it was customary for trains aproaching the bridge to sound the whistle and in refusing to give Instruction M.  The evidence showed that the whistles which were ordinarily sounded were sounded for a crossing a half a mile away from the bridge and for the draw and plaintiff had no right to rely upon this whistle.  Furthermore, the case was not submitted to the jury on the ground that there was negligence in violation of a custom, and defendant's Instruction M taking this from the jury should have been given.  Kirkland v. Bixby, 222 S. W. 462; Staroske v. Pub. Co., 235 Mo. 76; Frye v. Railroad, 200 Mo. 407; Degonia v. Railroad, 224 Mo. 594.   (4)   The court committed error in admitting evidence to the effect that a few individuals used the bridge by virtue of passes granted them.  The petition did not plead that the bridge was used by the public in general and the evidence did not so show. Degonia v. Railroad, 224 Mo. 590.  (5)  The court committed error in refusing to give to the jury defendant's Instruction I.  This instruction presented the question whether the defendant was required to keep a lookout ahead for soldiers.  Under the decisions of this State the defendant was not required to keep such lookout and the jury should have been plainly so instructed.  State ex rel. v. Ellison, 271 Mo. 470; Degonia v. Railroad, 224 Mo. 592.  (6)  The court committed error in refusing to give defendant's Instructions N and O.  The defendant was clearly entitled to have one or the other of these instructions given.  They presented the question as to whether the plaintiff's injuries were due to his own negligence or due to his failure to perform the duty imposed upon him of keeping on the alert and observing everything that took place within sight or hearing of the bridge.  If the case was submitted to the jury at all, clearly the defendant was entitled to have the jury instructed on this phase of the case.  State ex rel. v. Ellison, 271 Mo. 474; American Brewing Assn. v. Talbot, 141 Mo. 674.  (7)  The verdict of the jury is excessive.  Furthermore, the amounts of compensation allowed by the United States Government, for whose benefit this suit is prosecuted, indicate that the amount is excessive.  Stolze v. Transit Co., 188 Mo. 581; Dominick v. Mining Co., 255 Mo. 463; Clifton v. Railroad, 232 Mo. 708; Highfill v. Independence, 189 S. W. 801; Lyons v. Ry., 253 Mo. 143.  (8)  Plaintiff is not the real party in interest and is not entitled to maintain this action.  War Risk Insurance Act, U. S. Comp. Stat. 1923, Cumulative Supplement, sec. 514tttt; Sec. 1155, R. S. 1919.   (9)  The War Risk Insurance Act, under which this suit was prosecuted, as far as it undertakes to control, direct and compel the prosecution

of plaintiff's alleged cause of action and to take an assignment thereof is violative of the Federal Constitution. 5th Amendment to the Federal Constitution; Sec. 8, Art. I, Federal Constitution.

*Hogsett & Boyle* for respondent.

(1) The court committed no error in refusing to give defendant's peremptory instruction requested at the close of the whole case. Under the pleadings and the evidence a typical case was made for the application of the humanitarian doctrine and this is true even under the strictest application of the so-called "section-hand rule" contended for by appellant (which rule, however, has no application to this case). Degonia v. Railroad, 224 Mo. 592; Gabel v. Railroad, 251 Mo. 257; State ex rel. v. Ellison, 271 Mo. 468. It was a fair question for the jury whether the engineer had time to give warning to plaintiff after he saw, or by the exercise of ordinary care, could have seen him in a position of peril and oblivious to his peril and thereby to have avoided striking him. Logan v. Railroad Co., 254 S. W. 711; Campbell v. Railroad Co., 211 Mo. App. 331; Roques v. Railroad Co., 264 S. W. 476; Johnson v. Railroad Co., 268 S. W. 903; Messer v. Ry. Co., 274 S. W. 864; Montague v. Ry. Co., 193 S. W. 936, 264 S. W. 813. (2) The court committed no error in giving to the jury Instruction 1. (a) The instruction clearly requires the jury to find that a warning would have avoided the accident and that the injury was the direct result of the negligence of the engineer in failing to give the warning. Eppstein v. Mo. Pac. Ry. Co., 197 Mo. 737; Reyburn v. Railroad, 187 Mo. 565; Hill v. Ry. Co., 289 Mo. 193; Hoff v. Wabash Ry. Co., 254 S. W. 878. (b) The engineer was under a duty to keep a lookout for plaintiff and other soldiers guarding the bridge and the so-called section-hand rule or trackmen rule contended for by appellant does not apply. Blancke v. Railroad Co., 133 N. E. (Ohio) 484; Weininger v. Union Pacific, 276 Fed. 65; Kelly v. Ry. Co., 107 Atl. 780; Kidd v. Ry. Co., 274 S. W. 1079; Greenwell v. Railroad Co., 224 S. W. 404; Hubbard v. Wabash Railroad Co., 193 S. W. 579; Church v. Railroad Co., 119 Mo. 203; Dixon v. Railroad Co., 109 Mo. 403; Zini v. Terminal Railroad Co., 250 S. W. 47; Winkler v. Terminal Railroad Co., 227 S. W. 625; Frain v. Davis, 237 S. W. 131; Davidson v. Hines, 246 S. W. 295; Hughes v. Ry. Co., 274 S. W. 703. (3) The court did not err in admitting evidence to the effect that it was customary for trains approaching the bridge to sound a whistle, and did not commit error in refusing to give defendant's Instruction M. (a) Testimony to the effect that it was customary for trains approaching the bridge to sound a whistle was admissible. Appellant proved the same fact by its own wit-

nesses, hence it is in no position to complain of evidence offered to
the same effect by the plaintiff. Gray v. Novinger, 166 Mo. App.
85; Haxton v. Gilsonite Cons. Co., 134 Mo. App. 360; Barton v.
Faeth, 193 Mo. App. 402. Plaintiff's petition alleged the existence
of this custom and it was competent to prove its violation. Hughes v.
Ry. Co., 274 S. W. 703; Swigart v. Lusk, 196 Mo. App. 474. This
evidence of custom was admissible as an evidentiary fact bearing up-
on the issues as to plaintiff's alleged oblivion to peril and as to his
alleged contributory negligence. Hughes v. Ry. Co., 274 S. W. 703;
Rawie v. Railroad Co., 274 S. W. 1031; Kinney v. Ry. Co., 261
Mo. 113; Cassin v. Lusk, 277 Mo. 663. (b) Defendant's Instruc-
tion M was properly refused. Harrington v. Dunham, 273 Mo.
430. (4) The court committed no error in admitting evidence to
the effect that certain individuals used the bridge by virtue of passes
granted them. (a) Defendant proved this fact itself by several
of its witnesses, and is in no position to complain of similar testi-
mony offered by plaintiff. Harrell v. Harrell, 223 S. W. 919; Gray
v. Novinger, 166 Mo. App. 85; Haxton v. Gilsonite Cons. Co., 134
Mo. App. 360. (b) Under the issues raised by the petition it
was competent to show the nature of the bridge and the purposes
for which it was ordinarily used, particularly in view of defendant's
opening statement to the effect that the bridge was "exclusively
a railroad bridge." Kinney v. St. Ry. Co., 261 Mo. 113; Cassin v.
Lusk, 277 Mo. 663. (5) The court committed no error in refusing
to give to the jury defendant's Instructions K and L. Kinlen v.
Railroad Co., 216 Mo. 162; Klockenbrink v. Railroad, 172 Mo. 690;
Johnson v. Railroad, 259 Mo. 550. Moreover, the court gave plain-
tiff's Instruction 3 withdrawing all issues of negligence as a basis
of recovery save those submitted in the instruction for a verdict.
(6) The court did not commit error in refusing to give defendant's
Instructions N and O. (a) Contributory negligence is no defense
to a case under the humanitarian doctrine. Banks v. Morris & Co.,
302 Mo. 266; Logan v. Railroad Co., 254 S. W. 710; Ellis v. Ry. Co.,
230 Mo. 671; Dalton v. Ry. Co., 276 Mo. 663. (b) In a case founded
upon the humanitarian doctrine, instructions on contributory neg-
ligence are properly refused. Phillips v. Ry. Co., 226 S. W. 867;
Johnson v. Ry. Co., 203 Mo. 415; Peterson v. St. Ry. Co., 211 Mo.
519. (7) The verdict of the jury is not excessive. Trowbridge
v. Fleming, 269 S. W. 610; Smith v. So. Ry. Co., 213 S. W. 485;
Gunwald v. Railroad, 266 S. W. 717; Hurst v. Railroad Co., 219
S. W. 568; Hubbard v. Railroad Co., 193 S. W. 579; Shaw v. Kansas
City. 196 S. W. 109; Miller v. Harpster, 273 Mo. 605; Myers v. City
of Independence, 189 S. W. 817; Evans v. General Explosive Co.,
239 S. W. 487. (8) Plaintiff is the real party in interest and this
suit is properly brought in his name. There has been no assign-

ment of the case and the Government is merely subrogated to a portion of the recovery by virtue of the compensation which it has paid plaintiff.   30 Cyc. 78-82; Guerney v. Moore, 131 Mo. 650; Young v. Hudson, 99 Mo. 102; Ely v. Porter, 58 Mo. 158; Peters v. Railroad Co., 24 Mo. 586; Webb v. Morgan, 14 Mo. 428; Wilson v. Smith, 52 Mo. App. 133; Phoenix Assur. Co. v. Trans. Co., 117 U. S. 312; Continental Ins. Co. v. Loud & Sons Lbr. Co., 93 Mich. 139; Norwich Ins. Co. v. Standard Oil Co., 59 Fed. 984; Southern Bell Tel. Co. v. Watts, 66 Fed. 460.   (9)   No constitutional right of defendant is invaded by the judgment in this case.

BLAIR, J.—Action for personal injuries.   The jury found for plaintiff and assessed his damages at the sum of $15,000.   Defendant has appealed from the judgment rendered on such verdict.

The petition alleged several negligent acts on the part of defendant.   At the request of plaintiff, the trial court gave an instruction withdrawing from the consideration of the jury all grounds of negligence alleged in the petition, except the single ground submitted in Instruction 1, which was based on the humanitarian rule. The amended answer contained a general denial, a plea of contributory negligence, and a plea that plaintiff was not entitled to prosecute the action because such action was being prosecuted for the benefit of the United States Government and the United States Government is the real party in interest.

There is no material conflict between counsel concerning the facts which the evidence of each party tended to establish, but there is great difference of opinion concerning the effect of such testimony. We will first consider whether a case was made for the jury.

I.   Plaintiff was a soldier in the service of the Federal Government during our participation in the World War.   On August 1, 1917, he was detailed, with other soldiers, to guard the railroad bridge of defendant over the Mississippi River, between Alton, Illinois, and Missouri.   Shortly before six o'clock, A. M., on that day plaintiff was struck and injured by freight train moving toward Alton and entering said bridge from the Missouri side.

**Humanitarian Rule: Sufficient Evidence.**

Plaintiff was assigned a post at the south end of the bridge. It was his duty to guard the bridge against the approach of persons who might attempt to destroy or damage it, and also to observe persons upon trains using said bridge.   Other soldiers were detailed for similar guard duty at the Illinois end and at regular intervals over the entire length of the bridge.   Guards were also stationed under the bridge on both banks of the river.

The bridge carried double railroad tracks and contained a draw span to permit the passage of boats. Approaching the bridge from the Missouri side the double tracks were in a curve to the left and on a slightly ascending grade. This and other obstructions present at the time gave only a limited view from the end of the bridge of trains approaching it from the Missouri side. Plaintiff's post was about twenty feet square, was immediately off the Missouri end of the bridge and covered both tracks. It was his duty to walk along a side of this square and stop and look for persons approaching the bridge, and then turn and walk along another side of the square and repeat his observations.

The testimony of plaintiff was that he was at his post and had stopped with his feet astride the rail facing the bridge when he was struck from behind by the approaching train; that he had looked down the tracks immediately before, when he was facing in that direction, and saw no train; that he heard no bell or whistle and heard no other noise of an approaching train. It was just after sunrise. It was a clear morning without fog. There was testimony that soon after his injury plaintiff made a statement that he was sitting beside the track when struck.

Other testimony offered by plaintiff tended to show that no whistle was blown or bell rung by the locomotive; that the train was approaching at a speed of from fifteen to twenty miles an hour or more; that the train was coasting and the engine making no noise. An officer of the guard had just inspected plaintiff, had gone to the next guard and had inspected him, and was about to inspect a third guard when the accident happened.

The engineer of defendant testified that, because of the curve, he could not see the end of the bridge until the locomotive was within about two car-lengths thereof; that he then saw plaintiff sitting on a timber or guardrail beside and about two feet from the right-hand rail and leaning over toward the track; that he immediately shut off the air and applied the brakes and blew seven to a dozen sharp blasts of the whistle; that plaintiff did not move from his sitting position with his head down and forward; that the steam cylinder of the engine struck plaintiff on the left side of the head (the left side of the head was injured); that the train stopped in about ten or twelve car-lengths after plaintiff was struck.

The engineer also testified that he blew the whistle for the curve and also one long blast for the draw bridge when the train was a half mile from the bridge; that there was a string of cars on the up-stream (left) track. The testimony of other witnesses, including the train men, was that the whistle was blown, both just at the bridge and before that for the curve (or a crossing) and the draw bridge.

315 Mo.—46.

The submission of the case under instructions requested by plaintiff solely under the humanitarian rule makes it unnecessary to consider whether plaintiff was guilty of contributory negligence or the train operatives were negligent in approaching the bridge without giving customary warnings. We will assume, and the record fully warrants such assumption, that plaintiff was guilty of negligence contributing to his injury.

The case was submitted to the jury on the sole question of whether or not the engineer saw, or by the exercise of ordinary care should have seen, plaintiff in a position of peril in the path of the train and oblivious of his peril in time, by the exercise of ordinary care on the part of said engineer, to have given plaintiff timely warning of the approach of said train and could have thereby avoided striking plaintiff.

Defendant's contention that the trial court should have instructed the jury to render a verdict in its favor rests upon two main propositions: First, that the engineer was not required to be on the lookout for plaintiff, because the section-hand rule applied to plaintiff and he was required to look out for his own safety, so far as the danger from moving trains is concerned. Second, that there is no evidence that the engineer saw plaintiff in a position of peril and oblivious to such peril in time to have warned him and failed to give such warning.

It will not be necessary to consider the first contention in determining whether a case was made for the jury. The same contention is urged in connection with alleged error in the giving of Instruction 1 and we will refer to such contention later in that connection.

We think a case was made under all the evidence which authorized submission of the case to the jury under the humanitarian rule. If made by no other testimony in the record, it was made by the testimony of the engineer that he saw plaintiff sitting on a timber or guardrail about two feet from the track with his head down and toward the track. This testimony, taken in connection with the testimony of plaintiff's witnesses that the whistle was not blown nor the bell rung, tends to prove that the engineer saw plaintiff in a position of peril and oblivious to such peril and thereafter failed to sound any warning to notify him of his peril in time to enable him to move out of the danger zone.

Defendant contends that plaintiff cannot take the benefit of the engineer's testimony that he saw plaintiff in a position of peril, when the locomotive was two car-lengths away from him, without also accepting as true the engineer's testimony that he thereafter caused seven to a dozen sharp blasts of the whistle to be given and that, therefore, all the testimony that the engineer actually saw

plaintiff in time to warn him of his danger also shows that timely and sufficient warning was actually given.

The jury may believe all of the testimony of any witness or none of it or may accept it in part or reject it in part, just as it finds same to be true or false when considered in relation to the other testimony and the facts and circumstances in the case. [State v. Williams, 274 S. W. (Mo.) l. c. 52; State v. Harp, 267 S. W. (Mo.) l. c. 846 and cases; State v. Stewart, 278 Mo. l. c. 185; State v. Conley, 255 Mo. l. c. 197; Montague v. Railway, 193 S. W. (Mo. App.) l. c. 936; Preston v. Union Pac. Railroad Co., 239 S. W. (Mo.) l. c. 1082.]

There was accordingly substantial testimony tending to prove that the engineer saw plaintiff in a position of peril and oblivious of his peril in time to have warned him of his danger and thereafter failed to exercise reasonable care to warn him of his danger. Whether plaintiff was standing astride the rail with his back to the approaching train, as he testified at the trial, or was sitting on a timber facing the track with his head down and toward the track, as he is said to have stated soon after the injury and as the evidence of defendant tended to show, is not controlling. If he was standing astride the rail a step or two at most would have taken him out of the danger zone. If he was sitting beside the track, the mere turning away of his head, or, as the engineer said, merely raising his body to an upright sitting position, would have avoided his being struck by the locomotive.

There was evidence, which it was the exclusive province of the jury to believe, that the engineer failed to blow the whistle or ring the bell. The engineer did not say that he did not have time to give sufficient warning after he saw plaintiff. There was evidence from which the jury was authorized to find that he did have time to sound a warning before the engine struck plaintiff.

The inference naturally to be drawn from the engineer's description of plaintiff's position and heedlessness of the warning, which he says he gave him, is that plaintiff was asleep or that his attention was deeply absorbed elsewhere. Even if plaintiff was asleep, it only established plaintiff's utter obliviousness to danger. That plaintiff was asleep might reasonably be inferred from the fact that he did not hear the train approaching, but such conclusion is inconsistent with the testimony of the guard officer that he inspected plaintiff just a moment or two before. Speculation on that point is altogether fruitless because, even if plaintiff was asleep or deeply absorbed by some other matter, it aids defendant not the least. Obliviousness to danger for some reason was shown by substantial testimony The trial court did not err in submitting the case to the jury. [Banks v. Morris & Co., 302 Mo. l. c. 267, and cases cited.]

II.   (a)   The alleged error in giving Instruction 1 is next for consideration.   The first criticism is that it did not require the jury to find that, by the sounding of the whistle, plaintiff would have been able to have removed himself from the path of the engine in time to have avoided being struck and injured by it.

**Instruction.** The instruction required the jury to find that the giving of timely warning, if it was not given, would have enabled the engineer to avoid striking plaintiff.   Manifestly, the only way the engineer could have avoided striking plaintiff was for plaintiff to have moved out of the path of the engine.   The finding required in the instruction was therefore equivalent to a requirement of a finding that timely warning would have enabled plaintiff to have removed himself from the danger zone before the locomotive reached him.   We are unable to see any merit in this criticism of Instruction 1.

(b)   Instruction 1 is assailed because it submitted to the jury the question whether the engineer, by the exercise of ordinary care, should have discovered plaintiff in a position of danger.   That is another way of contending that it was the duty of plaintiff to look out for his own safety and that it was not the duty of

**Section-Hand Rule.** the engineer to be on the lookout for him.   The concrete contention is that the rule applicable to section men working upon and along railroad tracks applied to plaintiff, and it therefore was his duty to look out for approaching trains and to protect himself against their movements and that defendant owed no duty to look out for plaintiff and that the humanitarian rule cannot be invoked unless the engineer actually saw plaintiff in a position of peril and oblivious to such peril or unable to extricate himself therefrom and failed to give him timely warning thereof.

Interesting as the investigation of this question might prove to be, we are not called upon to consider it under the record in this case.   In view of the positive testimony of the engineer, the only person in the world having knowledge of the fact, that he actually did see plaintiff sitting in a position of danger as soon as he could see around the front of his engine and while said engine was yet two car-lengths away from plaintiff, it is utterly inconceivable that the jury gave the slightest consideration to the question of whether or not said engineer, by the exercise of ordinary care, could have seen plaintiff in such position in time to have warned him of the approach of the train and thus avoid striking him.   In other words, even though the section-hand rule was applicable to plaintiff, as defendant contends, the error, if error it was, due to the incorporation of the clause in question in Instruction 1, can confidently be asserted to have been entirely harmless error.   Harmless error is not reversible error and we overrule defendant's contention on that ground, with-

out regard to and without considering the applicability of the section-hand rule to plaintiff.

(c) The remaining criticism of Instruction 1 is that its concluding sentence precludes the possibility of the jury finding the plaintiff guilty of contributory negligence. The clause referred to reads: "And this is true even though you should **Contributory** believe and find from the evidence that plaintiff himself **Negligence.** was negligegnt in failing to observe the approach of said train." The case was submitted to the jury solely under the humanitarian rule. Contributory negligence of plaintiff was therefore no defense. [Eppstein v. Mo. Pac. Ry. Co., 197 Mo. 720; Banks v. Morris, supra.]

III. (a) Error is assigned to the admission in evidence of proof *tending to show* that it was customary for trains approaching the bridge to sound the whistle. The same contention of error is made **Custom.** as to the court's refusal to give defendant's Instruction M. The custom of blowing the whistle when trains approach the bridge and plaintiff's reliance upon such custom were pleaded in the petition. It is contended that such whistle was for a curve or crossing and for the draw on the bridge and that plaintiff did not plead that such whistle was for the benefit of soldiers guarding the bridge.

Such evidence tended only to prove defendant's primary negligence and it would seem that all such proof, together with any possible question of error in its admission went out of the case when all grounds of negligence, except the alleged negligence of defendant, under the humanitarian rule, were withdrawn from the consideration of the jury. Instruction 3 reads:

"You are instructed that all grounds of negligence save the one submitted to you in Instruction 1 are withdrawn from your consideration as a basis of recovery in this case."

We hold that the giving of said Instruction 3 cured any error, if such was committed, in admitting the testimony of which complaint is now made.

(b) Said Instruction 3 withdrew from the consideration of the jury all grounds of negligence, except those submitted in Instruction 1. Refused Instruction M did not refer to any **Cured by** ground of negligence submitted in Instruction 1. In-**Other** struction M was therefore covered by Instruction 3, and **Instruction.** defendant is in no position now to urge error in the refusal of Instruction M and its correctness need not be considered.

IV. Error is assigned to the admission of evidence tending to prove that individuals used the bridge by virtue of passes granted to them by the officer in command of the soldiers guarding the bridge.

The evident purpose of such proof was to charge the defendant and its engineer with notice that persons were likely to be

**Duty to Look Out.** upon said bridge and to charge defendant with the duty to look out for them. Any error alleged to have occurred through the admission of such evidence was harmless, in view of the testimony of the engineer that he actually saw plaintiff in a position of peril and apparently oblivious of such peril. This assignment is disposed of adversely to defendant by what has been said under paragraph II(b), supra.

V. Error is assigned because the court refused to give defendant's Instruction I. Said instruction reads:

"The court instructs the jury that the plaintiff cannot recover anything in this case on the ground that the defendant failed to keep

**Look Out.** a reasonably careful lookout ahead for soldiers, including the plaintiff, on or near its track on said bridge on which said train was running."

The harmlessness of this error, assuming it to be such, is shown by what we have already said under paragraph II(b).

VI. Complaint is made of the refusal of defendant's Instruction K, as follows:

"The court instructs the jury that the plaintiff cannot recover anything in this case on the ground that the defendant operated the

**Speed.** train in question at the time and place in question at a dangerous or excessive rate of speed."

We overrule this assignment for the same reasons controlling our ruling in respect to the refusal of defendant's Instruction M, as set forth in paragraph III(b).

VII. Refused Instruction L was as follows:

"You are further instructed that you cannot return a verdict in this case on the ground that the defendant, its agents, servants and employees saw, or by the exercise of ordinary care, should have seen

**Peril.** the plaintiff approaching a position of peril, or in a position of peril, or oblivious of his position of peril, or unable to extricate himself from said peril in the path of said train, in time by the exercise of ordinary care to have stopped said train, or to have slackened the speed thereof and thereby to have avoided striking plaintiff."

The refusal of this instruction is justified by what we said in approving Instruction 1 under paragraph II(b), supra.

VIII. Instruction N, asked by defendant, was refused. It told the jury in substance that, if plaintiff was not exercising ordinary care

for his own safety and his injuries were caused solely by reason there-
of, the jury should find for defendant.  There is no evi-
Contributory   dence tending to show that plaintiff's injuries were
Negligence.    due to his sole act, independent of and not concurring
with the alleged negligent act of defendant which was submitted to
the jury.  If, by this instruction, defendant sought to assert as a
defense the contributory negligence of plaintiff, the refusal of the
instruction was entirely proper, as appears from our consideration
of the concluding sentence of Instruction 1, discussed in paragraph
II(c), supra.  The same consideration sufficiently disposes of de-
fendant's complaint of the refusal of Instruction O, which is quite
similar to Instruction N.

IX.  We think the contention that the verdict of $15,000 is ex-
cessive is without substantial merit.  Plaintiff was about twenty-five
years of age when he was injured on August 1, 1917.  His prior good
physical condition is attested by the fact that he was
Excessive      accepted by the Government for military service a little
Verdict.       over four months prior to his injury.  He was earning $25
per week before he joined the army.

The evidence on the part of plaintiff tended to show that he be-
came unconscious very soon after the accident and remained so for a
number of hours; that he was bleeding from the nose, both ears and
one of his eyes, immediately after the accident; that he lost several
teeth and had others broken, and suffered a fracture at the base of
the skull; that there was a large swelling on the left side of the head
above and behind the ear immediately after his injury.  Dr. Fisher
testified that plaintiff "had a staggering gait, dizziness, double
vision, headaches, paralysis of the left side of his face, weakness of
his left arm and leg;" that he was unable to chew on his left side
because of paralysis of the facial nerve.

Plaintiff testified that he remained at home unable to work until
July, 1920; that he had headaches and staggering spells and buzzing
in his ear; that his chest hurt him and that he spit up quantities of
blood daily for about two years after the accident; that he could
not hear with his left ear and that the left eye was weak.

Plaintiff did not remain in the hospital very long, but underwent
treatment thereat until as late as January, 1921, or nearly four
years after the accident, and subsequently took electrical treatments.
In March, 1921, he went to the Veterans' Bureau for vocational train-
ing.  He first took up training as an automobile mechanic, but found
it too difficult for his physical condition.  He then took up succes-
sively tailoring and shoe repairing, but gave them up for similar
reasons.  In August, 1922, he went to Kansas City and took up
vocational training in storage-battery work, and was doing this

kind of vocational work at the time of the trial in 1923. Plaintiff testified that he continued taking treatments until about a month before the trial.

There is evidence tending to prove that plaintiff's mental condition and memory are bad; that he had lost the hearing in his left ear and that he has only fifty per cent vision and that such conditions are permanent. The only work done by plaintiff since his injury was in connection with his vocational training.

Defendant admits that plaintiff sustained substantial injuries, but contends that they have been magnified unduly and that the jury was too liberal in its award. The jury was authorized to believe the testimony as to the extent of the injuries suffered by plaintiff, rather than the testimony of defendant which tended to minimize their character and extent. It is unnecessary to detail defendant's evidence, because all we are here concerned with is the presence in the record of substantial evidence tending to support the award of damages made by the jury. We think the evidence amply does this.

It will serve no good purpose to review the cases cited by the parties to support the award or to show that it is excessive. Each case must stand upon its own peculiar facts. The amount of the award in this case met the approval of the trial judge, and we find no good and sufficient reason for compelling a *remittitur*.

X. It is contended that plaintiff is not the real party in interest and is not entitled to maintain this action because, as defendant contends, the action is being prosecuted under the direction and for the benefit of the United States Government, under the **Real Party in Interest: Assignment to Government.** provisions of the War Risk Insurance Act; that plaintiff at the time of the trial had received about $2,000 compensation under said act and is entitled to such future compensation as is allowed by the act. It is suggested that this fact alone required the trial court to give defendant's peremptory instruction to find for defendant and that the court erred in failing to do so.

Section 514tttt, U. S. Comp. Statutes, 1923, Cumulative Supplement, as same is set out in defendant's brief, reads as follows:

"If an injury or death for which compensation is payable under this article is caused under circumstances creating a legal liability upon some person other than the United States or the enemy to pay damages therefor, the director, as a condition to payment of compensation by the United States, may require the beneficiary to assign to the United States any right of action he may have to enforce such liability of such other person, or if it appears to be for the best interests of the beneficiary the director may require him to prosecute the said action in his own name, subject to regulations. The

director may require such assignment or prosecution at any time after the injury or death, and the failure on the part of the beneficiary to so assign or to prosecute said cause of action in his own name within a reasonable time, to be fixed by the director, shall bar any right to compensation on account of the same injury or death. The cause of action so assigned to the United States may be prosecuted or compromised by the director, and any money realized or collected thereon, less the reasonable expenses of such realization or collection, shall be placed to the credit of the military and naval compensation appropriation. If the amount placed to the credit of such appropriation in such case is in excess of the amount of the award of compensation, if any, such excess shall be paid to the beneficiary after any compensation award for the same injury or death is made.''

There is no evidence that, as a condition to the payment of compensation to plaintiff by the United States, the director required plaintiff to assign to the United States his right of action against defendant. We are unable to concur in defendant's assertion that the right of action stands assigned as a matter of law. But even if it did, neither such assignment of the right of action to the United States nor the prosecution of the right by the beneficiary in his own name, subject to regulations, contemplates the beneficial interest of the Government further than reimbursement to it for costs of collection and its payment of compensation to the beneficiary. Any excess is payable to the beneficiary. Hence, under the proof here, the most that can be said is that plaintiff's interest in the damages collected on account of his injuries is dependent upon the realization of an amount sufficient to pay the costs of collection and to reimburse the Government for compensation paid to him. He had received about $2,000 as such compensation at the time of the trial. Such compensation was suspended during vocational training. The full extent of his compensation has not been determined, so far as the record discloses, but it may readily be seen that in all probability the collection of the judgment of $15,000 will take care of the costs of its realization, reimburse the Government for its compensation paid and hereafter to be paid to plaintiff and that a considerable balance will still be payable to plaintiff. He, therefore, has a most substantial interest in the right of action and the judgment obtained.

The mere fact that the Government is entitled to claim a portion or all of the proceeds of the suit to enforce plaintiff's right of action for damages does not permit defendant to avail itself of the defense that plaintiff is not the real party in interest. [30 Cyc. 78; Swift & Co. v. Wabash Railroad Co., 149 Mo. App. l. c. 530.]

XI. The fiinal contention made in defendant's brief is this: "The War Risk Insurance Act, under which this suit was prosecuted, as far as it undertakes to control, direct and compel the prosecution of plaintiff's alleged cause of action and to take an assignment thereof, is violative of the Federal Constitution."

**Constitutional Question.**

Under our rule a constitutional question must be raised at the first opportunity and kept alive during the trial. The third paragraph of the amended answer, upon which the case was tried, pleads that the United States Government is the real party in interest and disclosed full knowledge on the part of defendant at that time of the interest of the Government, under the statute we quoted in the preceding paragraph, in any judgment recovered. The attempted raising of the alleged constitutional questions in paragraphs 26 and 27 of the motion for new trial was too late. [Dudley v. Railroad, 238 Mo. 184; Milling Co. v. Blake, 242 Mo. 23; George v. Railroad, 249 Mo. 197; Miller v. Connor, 250 Mo. 677.]

Outside of that, defendant is not entitled to challenge the constitutionality of the federal statute quoted. We are unable to understand how the alleged unconstitutionality of such statutes affects the rights or property of defendant in any way. Unless it does, defendant cannot raise the question. [12 C. J. 760; Danciger v. Express Co., 247 Mo. 1. c. 212, and cases there cited.]

XII. It clearly appears that the trial proceeded to verdict and judgment without the commission by the trial court of reversible error of which defendant can complain. Although it was the duty of plaintiff to be on guard at all times and to observe the approach to the bridge of trains, as well as unauthorized persons, and although he was no doubt derelict in that duty in not observing the approach of defendant's train, yet such facts, under the humanitarian rule, do not defeat his recovery, if defendant's agents in control of the operation of the train observed plaintiff in a position of peril and oblivious of such peril and failed to give him suitable warning when they could have given such warning. The determination of those facts was within the province of the jury. Substantial evidence tending to support the verdict returned by the jury is found in the record. Its award of damages does not appear to be excessive, if defendant is liable at all for plaintiff's injuries. We are not authorized to disturb the judgment under such circumstances and it must be and is affirmed. All concur.