BEULAH BURY, BY, ETC., RESPONDENT, v. ST. LOUIS-SAN FRANCISCO RAILWAY CO., APPELLANT.*

Kansas City Court of Appeals. March 4, 1929.

---

*Corpus Juris-Cyc References: Appeal and Error, 3CJ, section 1588, p. 1414, n. 65; 4CJ, section 3114, p. 1123, n. 47; Railroads, 33Cyc, p. 1129, n. 68; p. 1139, n. 30.

E. T. Miller, Henry S Conrad, L. E. Durham, Hale Houts and Ilus M. Lee for appellant.

*C. A. Randolph* and *W. K. Atwood* for respondent.

BARNETT, C.—This is an action for damages for personal injuries sustained by plaintiff at a grade crossing in the town of Miller, Missouri. Plaintiff was driving a Ford automobile. in an easterly direction upon a public street about sixty feet wide, approaching an intersection of the street with defendant's railroad right of way. There was a passing track on the west side of the main right of way, and defendant's railway station was just east of the main track and north of the public street. The railroad track ran due north and south for about a quarter of a mile south of the crossing. There was a building or warehouse which was located just west of the passing track and forty-two feet south of the street which partly obstructed the view, and there was a string of railroad cars upon the passing track, the north end of which was about as far north as the north line of the warehouse. If we should attempt to set out the estimates and statements of the various witnesses as to the speed of the automobile, the speed of the railroad car, the distance of the automobile from the crossing at different times, and the distance of the railroad car at different times, this statement would be as complicated and as hard to read as the abstract of record itself. However, there was testimony in the record that the plaintiff was driving a Ford automobile with two other passengers sitting with her in the front seat. She drove upon the main street in the town at the rate of about twenty miles per hour and slowed down as she approached the crossing to a rate of about ten miles per hour. The occupants of the car, after they reached the place where the warehouse obstructed the south view of the railroad right of way, looked north until the front wheels of the Ford car had reached the passing track. They then looked south and saw a railroad car about fifty or sixty feet away. Some of the witnesses for the defendant estimated the rate of speed of the railroad car at between five and ten miles per hour. One witness testified that the railroad car was moving five miles per hour. There is no question but what the occupants of the car, including plaintiff, continued to look north long after they had an unobstructed view of the railroad track looking south. When the occupants of the Ford car saw the oncoming railroad car, the plaintiff put on the brakes and Mr. Fortner seized the steering wheel of the Ford automobile, struggled with the plaintiff, and the result of the combined efforts of Mr. Fortner and the plaintiff caused the automobile to turn south. The automobile went far enough toward the main track so that a collision ensued which resulted in injury to plaintiff. The automobile had almost come to a stop when the collision occurred. There was evidence that the railroad car did not decrease its speed until after the

collision; that the occupants of the car did not hear a whistle or bell, although one of plaintiff's witnesses testified that a whistle was sounded after the struggle over the steering wheel had started, and another testified that a whistle had been heard sometime previous to that. The railroad car was an electric motor car, similar in design to an interurban electric car. It was operated by a motorman or engineer who testified that he saw the automobile when it was fifty feet west of the crossing. He also testified that he stopped the railroad car as soon as he could, to-wit: in a distance of forty-five feet, but that if the railroad car had been going five miles per hour as one of the witnesses testified, he could have stopped the car in twenty-two and one-half feet. There was testimony that the occupants of the car all had their heads turned to the north and that a man stood in view of the approaching railroad car and waived and signaled to them before the struggle over the steering wheel took place. The case was submitted to the jury under the humanitarian doctrine. Plaintiff's theory of the case is under attack, and we therefore set out plaintiff's main instruction in full. It is as follows:

Instruction No. 1.

"The court instructs the jury that if you believe and find from the evidence that on or about the 23rd day of May, 1926, the plaintiff was driving an automobile east upon a public street, if so, through the town of Miller, Lawrence county, Missouri, and that said street was crossed in said town by the railroad line of the defendant running in a northerly and southerly direction, if so, and that while plaintiff was attempting to cross said railroad line at said street, if so, a collision occurred, if so, between a northbound train of the defendant and said automobile and that plaintiff was injured thereby, if so, and if you further find that plaintiff and said automobile immediately before such collision, if any, were in a position of imminent peril or danger of being struck by said train, and that she was oblivious thereto, if so, or unable to extricate herself and said automobile therefrom, if so, and if you further find that the defendant's employees in charge of the operation of said train, if so, thereafter, saw or knew, or in the exercise of ordinary care could or should have seen or known, that plaintiff and the automobile in which she was riding were in a position, if so, or coming into a position, if so, of imminent danger of being struck by said train, if you so find, and that said plaintiff was oblivious to such danger, if so, or unable to extricate herself therefrom, if so, in time in the exercise of ordinary care, if so, with the appliances at hand, if so, and with reasonable safety to the persons on board said train, if so, to have stopped said train, or slackened the speed thereof, or sounded warning of the approach thereof, and thereby have avoided a collision, if you find a collision occurred and that the same could have been avoided thereby, but

that defendant's said employees failed and neglected so to do, if you so find, and that such collision, if any, was directly caused by such failure, if you so find, and that such failure, if any, constituted negligence on defendant's part if so, then your verdict will be for the plaintiff and against the defendant, even though you should further believe and find from the evidence that plaintiff failed to exercise the highest degree of care for her own safety in getting into such position, and that such failure contributed to cause said collision, if any, and said injuries if any.''

The evidence showed that the plaintiff was sixteen years of age at the time of injury. The court instructed the jury that if they found for the plaintiff, in assessing her damages, they should allow her such sum as would fairly and reasonably compensate her for her injuries, and that they might, among other things, take into consideration her age and expectancy of life and the impairment of earning capacity, if any, resulting from her injury. The jury returned a verdict for plaintiff in the sum of $2500. The court required a *remittitur* as a condition to overruling the motion for new trial. The *remittitur* was filed, judgment was then entered for plaintiff in the sum of $1500, and defendant appealed.

It is contended that plaintiff failed to make out a case under the humanitarian doctrine, because the evidence, when viewed in the light most favorable to plaintiff, showed that when the engineer was called upon to stop the train he had such a short time within which to act that he could not be held to be negligent for failing to do so. We will not attempt to point out all of the various findings of a jury which would be sustained by this record. It is sufficient to point out that there is evidence in the record from which a jury could find that it was obvious, after plaintiff threw on the brakes of the automobile, and the plaintiff and her guest began struggling with the wheel, that the occupants of the car were in a position of peril and would not be able to extricate themselves; that at this time defendant's electrical car was fifty or sixty feet away and was traveling at a rate of speed which would have enabled the engineer to stop the car within twenty-two and one-half feet. We think that this made a case for the jury under the humanitarian doctrine.

Appellant has called our attention to cases decided by the Supreme Court in which it was held that the railroad company could not be held guilty of negligence, even though it was shown that it was humanly possible for the railroad train to be stopped after the peril of the plaintiff had become obvious. [Sullivan v. Railroad, 308 Mo. 48; Rollison v. Railroad, 252 Mo. 525; Degonia v. Railroad, 224 Mo. 564; McGee v. Railroad, 214 Mo. 530.] In the Sullivan case the Supreme Court, in discussing the short time in which the engineer must act, referred to four and nine-tenths seconds as less than five

ticks of a watch. In the Degonia case the Supreme Court referred to ten seconds as ten ticks of a watch, and in the Rollison case the Supreme Court said that "to predicate negligence on two seconds of time is in and of itself a monumental refinement. We cannot adjudicate negligence on such pulse beats and hairsplitting, such airy nothings of surmise." On the other hand the Supreme Court en. Banc in the case of Chawkley v. Railroad Co., 297 S. W. 20, said:

"There is some speculation as to how much time it would take for the fireman, after seeing the peril of the plaintiff and her companions, to call to the engineer, for the engineer to comprehend the message and to sound the whistle. It must be remembered that men in charge of railway trains are trained to quick observation and quick action. They do not have to stop and think of the thing to be done. Action follows the impression, automatic and instantaneous; otherwise, they could not hold their jobs. . . . In the Sullivan case there is considerable refinement in the quoted extracts from the Springfield Court of Appeals, regarding what might happen in a given number of seconds where it is said that four seconds is equivalent to four ticks of a watch. A careful count shows that a watch ticks four or five times in a second. An official who watches a foot race can time it to the tenth of a second. His mind apprehends the end of the race and the winner and his action stops the watch; that is, his eye registers the thing that happens, the message is conveyed to his brain, his volition transfers the message to his hand, and the watch is stopped within the tenth of a second. A sprinter runs 300 feet in ten seconds—thirty feet a second. If, as Long says, the train was going thirty miles an hour, and the automobile half as fast, the latter moved at twenty-two feet per second. There was evidence that the automobile was going not more than twelve miles an hour. If, when it was two hundred feet from the track, Long saw it was not going to stop, nine seconds, and if it was only one hundred feet, then four and one-half seconds, intervened before the collision in which Long could have told the engineer of danger. It is not a violent inference that the fireman could say 'Whistle!' and the engineer could pull the cord within the space of a single second or less. We do not have to indulge in refinements to reach such a conclusion because trainmen are trained to act instantaneously."

The case from which we have quoted was decided by the Court en Banc after the decisions of the cases relied upon by appellant. It repudiates the loose and inaccurate statements contained in one of the earlier cases, and gives sound and excellent reasons therefor. Neither the Supreme Court nor any other appellate court can make a finding of fact in a lawsuit other than to declare that which is common knowledge. If it were true as a matter of common knowledge that a man with reasonable skill in operating a conveyance could not

apprehend danger and take action to prevent injury within four seconds, then automobile collisions at street crossings would be the rule rather than the exception. If it be true that the mind requires so much time to apprehend a situation and put the body into operation, then it could be impossible for any person to learn to play a piano. In this case the engineer was a witness for defendant. He testified that he could have stopped the railroad car within twenty-two and one-half feet. He was talking about the same car, at the same place, at the same time, and under the same weather conditions that were involved in this case. Surely an appellate court could not be expected to hold that his testimony was false as a matter of law, especially when every day we see stops made in short distances upon the appearance of danger.

We further take into consideration the fact that the railroad car in question was a single electric car, operated somewhat like a street car where all the appliances for controlling the speed of the car were under the control of a single motorman or engineer. The car was operated within the city limits and was approaching the main street of the town, where the engineer would naturally be on the lookout for persons who were using the public street. Under such circumstances the jury had a right to find that if the engineer allowed the car to run a distance of thirty-seven and one-half feet before taking action to stop the car after seeing that the occupants of the automobile were in a position of peril from which they could not extricate themselves, he was guilty of negligence.

Appellant contends that the court erred in giving plaintiff's instruction No. 1 as modified by the court. This is the instruction which has been set out in the statement of the case. It will be noticed that by this instruction the jury is allowed to find for plaintiff if they find that plaintiff, immediately before the collision, was in a position of imminent peril and that plaintiff was oblivious thereto or unable to extricate herself; and that the engineer thereafter knew or in the exercise of ordinary care could or should have known that plaintiff was in such position or coming into such position of imminent danger and was oblivious thereto or unable to extricate herself, and that the engineer knew such facts in time by the exercise of ordinary care to have stopped the train or slackened the speed thereof or sounded a warning of approach and could have thereby avoided the collision. We have pointed out that there was sufficient evidence to submit the case to the jury upon the theory that plaintiff was in a position of peril from which she could not extricate herself and that after her peril became obvious the engineer had time to stop the train by the exercise of ordinary care before a collision occurred. Without stopping to set out all of the evidence, we also hold that there was sufficient evidence from which the jury could have found that it was

obvious that plaintiff was coming into a position of peril and was oblivious of the danger, in time for the engineer to have sounded the whistle and thus attracted the attention of the plaintiff so that she would not have gotten into the position of imminent peril which resulted in the collision. But the vice of this instruction is the fact that all of these propositions are stated in the alternative; so that the effect of the instruction is to present to the jury, as one of the theories upon which the plaintiff might recover, the following state of facts; that plaintiff was in a position of imminent peril and unable to extricate herself; that defendant's employee in charge of the operation of the train thereafter knew or by the exercise of ordinary care . could or should have known that plaintiff was unable to extricate herself in time, by the exercise of ordinary care, to have sounded warning of the approach of the railroad car, and thereby have avoided a collision; that he failed to sound the warning.

There was no evidence upon which defendant could have been held liable upon such a theory. Plaintiff got into a position of peril from which she could not extricate herself because of the fact that, under the stress of the moment, she and another passenger struggled with the steering wheel and she put on the brakes, and there was evidence that the engineer could have avoided the collision by stopping. According to the testimony of some of the witnesses he did not have time to stop. It was very clear that he had time to sound the whistle. It is equally clear that sounding the whistle after plaintiff was unable to extricate herself would have done no good. Of course, we realize that it may be contended that the jury would not have so construed the instruction as to believe that the court intended that they should find for the plaintiff if the engineer had time to sound the whistle after plaintiff had gotten into a position of peril from which she could not extricate herself. But the Supreme Court has so often held that it is error to give an instruction which is not supported by any evidence that we do not feel at liberty to treat this as an open question.

Respondent contends that appellant's objection to Instruction No. 1 must fall upon deaf ears in this court; that appellant's assignment is wholly insufficient to present any issue for appellate review for the reason that it does not specify in what particular plaintiff's instruction No. 1 is defective or erroneous. Appellant's brief is divided under three titles. Under the first title "Assignment of Errors" appears the following: "The court erred in giving plaintiff's instruction No. 1 as modified and given by the court." Under the title "Points and Authorities" this allegation is repeated, followed by the citation of authorities. Under the heading "Argument" appears a sub-title "instruction No. 1." This is followed by a detailed statement of appellant's objection to the instruction in which

it is contended that the instruction is to be condemned because of the submission of unsupported alternatives. Authorities are cited to the effect that when an instruction submits ground for recovery in the alternative, authorizing a verdict upon any one of the alternatives alone, the instruction is bad if any one of the alternatives is unsupported by the evidence.

Section 1511, Revised Statutes 1919, provides that on appeals and writs of error the party shall, on or before the day next preceding the day upon which the cause is docketed for hearing, make out and furnish the court with a clear and concise statement of the case and the points intended to be insisted on in argument. If the appellant has made out and furnished the court the points intended to be insisted on in argument this satisfies section 1511, whether the points so made out be under the title "Assignment of Errors," "Points and Authorities," "Brief," "Argument" or under all of such titles, provided they be so connected as to clearly furnish a statement of the points to the court. It is clear that there has been no violation of the statute in this case. The sufficiency of appellant's assignment of errors must therefore turn upon a construction of the rules of this court. Appellant has cited decisions of the Supreme Court in support of its contention that the rule has not been complied with. In each case the Supreme Court was construing its own rule fifteen not our rule seventeen. While the rules are similar, yet they are not worded alike. Our rule seventeen provides that the brief shall distinctly and separately allege the errors committed by the inferior court, and no reference will be permitted in the oral argument to errors not thus specified. Our rule fifteen provides that the brief shall contain in numerical order the points or legal propositions relied upon with citation of such authorities as counsel may desire to present in support thereof. Appellant's assignment, both under the title "assignment or errors" and "points and authorities" is in numerical order. It very distinctly informs the court that the appellant complains of the action of the court in giving this instruction. The reasons why the instruction should not be given appear under the title "argument" in the same numerical order. We not only think that this is a substantial compliance with the statute and our rule, but we think it is good practice. It is more convenient, both for this court and opposing counsel, if the parts of the record under attack are pointed out in the assignment of errors, or the points and authorities, and the discussion, analysis and argument, is set forth in the printed argument. When a brief is so prepared the court at once perceives what part of the record needs closest attention. It is neither confusing nor inconvenient, when each assignment is taken up separately, to refer to the appropriate part of the printed argument for the development of appellant's contention. In discussing its own rule the Supreme Court has said:

"Much latitude must, in the very nature of things, be permitted under Rule 15 of this court. Each brief and argument must depend largely upon the individuality of the person who prepares or makes them, and no fixed standard can be erected by which each and all briefs and arguments are to be measured or tested. Just so there is a substantial compliance with Rule 15, no objection can successfully be made to the form of the brief or the order of the argument." [Wallace v. Libby, 231 Mo. 341, 1. c. 844.]

In discussing our own rule this court, speaking through Judge ARNOLD, has very clearly expressed the reason upon which the rule is based as follows:

"An examination of defendant's brief discloses there are, in fact, no separate assignments of error, but under "Points and Authorities." Said assignments are separately stated and numbered, thus making clear the contentions of appellant. This has been held to be a sufficient compliance with the rule and follows the ruling of the Supreme Court in Kirkland v. Bixby et al., 282 Mo. 462, 466, 322 S. W. 462, and cases there cited. [See, also, Forsee v. Garrison, 208 Mo. App. 408, 235 S. W. 473, Langs v. Midwest Motor Securities Co. (Mo. App.), 231 S. W. 272.] The points upon which defendant relies are clearly understood by the court, and plaintiff seems not to have been misled as indicated by the answers made to every point raised by appellant. We hold there is a substantial compliance with Rule 17, and the motion to dismiss the appeal is therefore overruled." [Smith-McCord-Townsend Dry Goods Co. v. American Express Co., 260 S. W. 129, 1. c. 131.]

The cases cited by respondent do not support her contention. The Supreme Court has recognized the rule that a bare statement in the assignment of errors that the court erred in giving or refusing a certain instruction, though insufficient standing by itself, is sufficient if the reasons why the court erred are given thereafter. It makes no difference whether the reasons given are under the title "Points and Authorities," or "Brief," or "Argument." The printed argument is a part of the brief. When such a separation is made it is only to indicate to the court that that part of the brief is argumentative in nature.

Appellant complains that by plaintiff's instruction No. 3 the court permitted the plaintiff, a minor, to recover for lost earnings without excluding from the consideration of the jury such earnings as would have been lost during her minority. It is undoubtedly true that the plaintiff's earnings during minority would belong to her parent, as there is no evidence in the record of complete emancipation. Respondent contends that such instructions have been sustained where the defendant did not ask an explanatory instruction excluding the time of plaintiff's minority from the consideration of the jury. This case must be retried. It is not likely that the instruction will again

be given in its present form. We therefore deem it unnecessary to decide the question. The judgment is reversed and the cause remanded. *Lee, C.,* concurs.

PER CURIAM:—The foregoing opinion by BARNETT, C., is hereby adopted as the opinion of the court. All concur, except *Trimble, P. J.,* absent.