## CHICAGO & N. W. RY. CO v. STRUTHERS.
### No. 9067.

Circuit Court of Appeals, Eighth Circuit.
July 20, 1931.

Rehearing Denied Aug. 31, 1931.

Abbott W. Sawyer, of Winona, Minn. (William T. Faricy and Warren Newcome, both of St. Paul, Minn., Samuel H. Cady, of Chicago, Ill., and Leslie L. Brown and Stephen H. Somsen, both of Winona, Minn., on the briefs), for appellant.

Ernest A. Michel, of Minneapolis, Minn. (Tom Davis and Carl L. Yaeger, both of Minneapolis, Minn., on the brief), for appellee.

Before KENYON and BOOTH, Circuit Judges, and OTIS, District Judge.

OTIS, District Judge.

This is an appeal from a judgment in the District Court awarding damages to appellee, hereinafter referred to as the plaintiff, on account of the death of one Eugene F. Curran, who was killed July 15, 1929, while employed by the appellant, hereinafter referred to as the defendant, as a locomotive fireman. Suit was brought in the District Court by the plaintiff as special administrator of the estate of Curran upon the theory that while Curran was working for the defendant and within the scope of his employment the locomotive engine he was riding was caused to be derailed, resulting in his death, by defendant's negligence in permitting gravel and stone to be and to accumulate on its track at the point of the derailment.

Reversal of the judgment is sought by the defendant chiefly on three grounds: First, that there was no substantial evidence that the defendant was negligent in permitting an accumulation of stone and gravel at the point where its locomotive was derailed; second, that there was no substantial evidence that such an accumulation, if there was one, was the proximate cause of the derailment; and, third, that the charge to the jury authorized a verdict for the plaintiff on a ground which there was no evidence to support. A proper consideration of the contentions made here by the defendant necessitates some recital of the evidence.

There is no controversy but that at the time and place referred to in the pleadings and testimony Curran was serving the defendant as a locomotive fireman, that from some cause the locomotive he was riding was derailed and wrecked, and that Curran was so gravely injured that he shortly died. The place of derailment was at a highway crossing near the station of Princeton, Wis.

The public highway which crosses the defendant's railway track where the derailment took place is a graveled highway. On one side of the railway the highway approaches the railway track on a slight downgrade. At the intersection of the track and highway, at the time of the derailment, on the inner side of each rail a second steel rail was laid sideways so that the ball of the second rail was hard against the inner upright side of the first rail, and so that the inner side of the first rail made with the side and upturned base of the second rail a steel trough through which ran the flanges of locomotive and car wheels. This steel trough was sometimes spoken of by the witnesses in the case as a flangeway. This flangeway was 2⅝ inches deep and 3 inches wide.

In the plaintiff's theory it was this steel bottomed flangeway which the defendant permitted to become so filled with packed stone and gravel, thrown into it by the wheels of vehicles passing on the graveled highway, that, striking the accumulation, the wheels of the locomotive on which Curran rode were caused to be lifted and to leave the rail.

1. Was there substantial evidence that the defendant negligently permitted in the flangeway at the point in question an accumulation of stone and gravel? The answer

to this question depends upon the answers to two others: Was there substantial evidence of an accumulation of stone and gravel? Was there substantial evidence that the defendant had notice of the presence at the point of derailment of a dangerous accumulation of stone and gravel?

The time of the derailment was at 6:30 o'clock, Monday morning, July 15, 1929. Plaintiff's principal witness, one Welmon R. Kennison, testified that he observed the derailment; that immediately thereafter he observed the condition of the flangeways; that one flangeway was filled with stone and gravel to within half an inch of the top of the rail; that in that accumulation was a groove left by the flange of a revolving wheel. This groove began about the center of the crossing, ran in an easterly direction for a few feet, then vanished. Two feet east of the end of this groove a flange mark appeared on the top of the rail.

This witness testified that this particular flangeway at the point referred to had been filled with stones and gravel since as early as July 5th and that before the derailment he had last observed its condition in that respect at 3 o'clock Sunday afternoon, July 14, 1929, when it was filled with stones and gravel level with the top of the rail. He had observed that gravel was thrown toward the flangeway by passing automobiles.

The testimony of this witness (to some extent it was corroborated by others) undoubtedly tended to prove that there was and for two weeks had been an accumulation of gravel and stones in the flangeway at the point of derailment. It cannot be said there was not substantial evidence of that fact unless the testimony of Kinneson is rejected as incredible. It was for the jury to pass on the matter of his credibility. Gunning v. Cooley, 281 U. S. 90, 94, 50 S. Ct. 231, 74 L. Ed. 720; 38 Cyclopedia of Law, 1518.

But an accumulation of stones and gravel in flangeways may not self-evidently be dangerous to passing trains. In addition, therefore, to proof of the presence of such an accumulation there must have been substantial proof that it constituted a dangerous obstruction. If it was a dangerous obstruction, proof that it had continued for two weeks was sufficient to show notice and to establish negligence, especially in view of testimony that the crossing and flangeways were inspected twice daily by the defendant's section foreman and section hands, except on Sunday, when they were not at all inspected. Unless the defendant had reason to believe or should have known that such an accumulation of gravel might cause a derailment, it violated no duty and was guilty of no negligence in not causing it to be removed.

There was, however, substantial evidence that an accumulation of packed stones and gravel in a flangeway, to a level with the top of a rail, would have a tendency to and might cause a derailment. That was the testimony in this case of expert witnesses offered both by the plaintiff and the defendant. On account of the possibility of derailment from such accumulations, employees of the defendant twice daily, except on Sunday, did, according to their testimony, remove the accumulations of gravel from these very flangeways. There was substantial testimony that if the flangeways at a crossing such as this filled up because of traffic on the highways with gravel and small stones so rapidly that they daily became entirely filled, then good railroad practice and proper care required the removal of such accumulation not more than a few hours before the passage of any train.

It cannot be said then that there was not substantial testimony tending to prove these facts: That at the place and time of the derailment which resulted in Curran's death there was an accumulation of gravel and small stones in the flangeways to a level with or nearly to a level with the top of the rails, that such a condition was likely to derail a train, and that it had continued sufficiently long before the derailment that in the exercise of ordinary care the defendant should have discovered and removed it. In short, there was substantial evidence that the defendant was negligent.

2. It is earnestly contended by the defendant that there was no substantial evidence that the derailment actually was proximately caused by an accumulation of gravel and small stones. Rather, it is urged, the evidence shows that the derailment probably was caused by a single very hard rock which had been thrown into the flangeway and of whose presence therein the defendant was not shown to have had any notice and on account of which, therefore, the defendant was not negligent. Unfortunately for this contention, while the testimony did tend to show that a particular small stone was a part of the accumulation in the flangeway and that it probably was the immediate cause of the derailment, this stone was not something

separable either in its quality or origin from the whole accumulation of small stones and gravel. The small stone referred to was described as about an inch in diameter. Having regard to the dimensions of the flangeway, a stone of such size, except as a part of an accumulation, could not alone have affected a derailment.

With evidence that the flangeway was filled with gravel and small stones, with evidence that this mass was packed down in the flangeway coming nearly to a level with the top of the rail, with evidence that at the point of accumulation the pilot wheels of the locomotive were seen or otherwise perceived by the locomotive engineer to jump upward, with evidence that after the derailment a groove made by a wheel flange was seen in this accumulation and that this groove ended where a part of the accumulation, a small stone, split and wedged into the flangeway, was afterward observed, with evidence that such a condition of accumulated stones and gravel could cause derailment, there was certainly enough to support a finding by the jury that the accumulation was the proximate cause of the derailment. With so much to support the finding, it was a jury question whether the accumulation was the proximate cause of the derailment. "The true rule is, that what is the proximate cause of an injury is ordinarily a question for the jury. * * * It is to be determined as a fact, in view of the circumstances of fact attending it." Milwaukee & St. Paul Railway Co. v. Kellogg, 94 U. S. 469, 474, 24 L. Ed. 256; Goodlander Mill Co. v. Standard Oil Co. (7 C. C. A.) 63 F. 400, 27 L. R. A. 583; 38 Cyc. 460.

3. Out of the charge to the jury the defendant has lifted certain language contending that therein was error. The language so isolated is as follows: "The plaintiff's claim is this, that the train ran off the track at this crossing because of an accumulation of sand, gravel, stones or rock in one of the flangeways, * * *. The first question for you to answer is this: was the defendant railway company negligent in the respect claimed by the plaintiff."

By this language, so the defendant argues, the court authorized a finding of negligence solely on account of an accumulation of sand or gravel or stone or rock and so permitted the jury to return a verdict for the plaintiff on the theory that an accumulation of sand alone was the proximate cause of the derailment to support which result there was no substantial evidence.

It must be conceded that there was no evidence that an accumulation of sand alone either did cause or could have caused the derailment. It may be conceded also that it is error to authorize a verdict upon any of several charges of negligence, one of which is not supported by substantial evidence. "The appellate court cannot know that it was not upon that baseless charge that the jury founded its verdict." Chicago, St. P., M. & O. Ry. Co. v. Kroloff (8 C. C. A.) 217 F. 525, 528. But when all of the charge here is read, as it should be, it is clear that it could not have conveyed any such limited meaning as the defendant gives to the excerpted sentences.

Quoting more fully from the charge we have: "The plaintiff's claim is this, that the train ran off the track at this crossing because of an accumulation of sand, gravel, stones or rock in one of the flangeways. * * * A railway company is not responsible for an accident caused by some dangerous accumulation of gravel on or in its tracks unless it had knowledge of it and failed to remove it. * * * The plaintiff claims that the cause of the accident, as I have said, was an accumulation of gravel in the flangeways at the crossing. It claims that for some days prior to the happening of the accident, accumulations of gravel and stones had been observed in the flangeways in the crossing. * * * To state the plaintiff's claim briefly, it is, that because of * * * loose gravel, the railway company did not do all that reasonable care required. * * * The defendant railway company claims * * * that if this accident was caused by an accumulation of stones or gravel, as claimed by the plaintiff, that was an unusual condition of which it had no notice. * * * The first question for you to answer is this, was the defendant railway company negligent in the respect claimed by the plaintiff? * * *"

It is most far-fetched to say that from all of this the jury could have understood it might return a verdict for the plaintiff on the theory that an accumulation of sand alone caused the derailment.

"Gravel" is defined by the lexicographers as "small, more or less rounded stones or pebbles, often intermixed with sand." Webster's New International Dictionary.

Clearly there was evidence justifying the submission of the issue whether an accumulation of gravel (which includes stones) alone or of gravel and stones caused the derailment. Any fair reading of the whole charge

reveals that that was the issue which was submitted.

The judgment below should be and is affirmed.