STATE OF MISSOURI at the Relation of V. W. WEDDLE, Relator, v.
FRANCIS H. TRIMBLE, EWING C. BLAND and HENRY L. ARNOLD,
Judges of the Kansas City Court of Appeals.—52 S. W. (2d) 864.

Division One, September 3, 1932.

2

*Shultz & Owen* for relator.

*Mayer, Conkling & Sprague* for respondents.

ATWOOD, J.—Relator has invoked our writ of *certiorari* directed to the Kansas City Court of Appeals on the ground that its decision rendered in the case of B. W. Weddle, Respondent, v. St. Joseph Railway, Light, Heat & Power Company, Appellant, is in conflict with certain controlling decisions of this court. [47 S. W. (2d) 1098.]

It appears from respondents' written opinion rendered in said cause that the action was for damages for personal injuries alleged to have been sustained by the plaintiff (relator here) in a collision between a Dodge truck which he was driving and an electric interurban car operated by the St. Joseph Railway, Light, Heat & Power Company at a public crossing between St. Joseph and Savannah. The case was tried and submitted to a jury solely on the humanitarian theory of negligence. The trial court gave Instruction No. 1, at plaintiff's request, which covered the entire case and directed a verdict, and is treated by the parties hereto as submitting in the disjunctive negligence on the part of the defendant in failing to warn of the approach of the interurban car, in failing to check the speed of the car, and in failing to stop the same. Plaintiff recovered a verdict and judgment in the sum of $2,500, and defendant appealed to the Kansas City Court of Appeals.

Respondents held in their opinion that a case was made for the jury on the charge of defendant's failure to stop the interurban car, but that the giving of plaintiff's Instruction No. 1 was erroneous because "there was no showing that the failure to slacken the speed of the car had anything to do with the collision, that is to say, that it was the proximate or contributed to the proximate cause of the collision," and because "there was no evidence upon which to submit

negligence on the part of the defendant in failing to warn," and the judgment was reversed and the cause remanded.

Instruction No. 1, thus referred to in the opinion, is as follows:

"The court instructs the jury that if you find from the evidence that on the 2nd day of August, 1928, and at all times herein mentioned, the place of accident complained of in plaintiff's petition was a public highway, and at all times herein mentioned the plaintiff was riding in an automobile along and over said highway, and that at the same time the defendant, Railway Company, by its agent, was operating an electric street car over an intersection in said highway; and if you further find from the evidence that the defendant's street car and the automobile, in which plaintiff was riding, collided on said highway, thereby injuring plaintiff; and that you further find from the evidence that plaintiff was in danger and imminent peril of being struck by said electric car, and that the defendant and its agent—while operating said electric car—saw, or by the exercise of ordinary care, could have seen that plaintiff was in a place of danger and imminent peril of being struck by said electric car and unable to extricate himself, if you so find, in time, for the defendant, by its agent, to have, by the exercise of ordinary care, avoided said accident, if you so find, by giving plaintiff warning by a gong or whistle of the approach of said electric car, or by checking the speed of said electric car, or by stopping the same, and thereby avoided striking plaintiff, if you so find; but that the defendant and its agent, in charge of said car, negligently and carelessly failed to give such warning, and negligently and carelessly failed to so check the speed of said electric car, or stop the same, and was thereby negligent, if you so find, and that by reason of said failure, if you so find, plaintiff was injured, then your verdict will be for the plaintiff and against the defendant."

The only points urged by relator are, (1) respondents' ruling that there was no evidence to support the submission of negligence in failing to check speed or give warning is in conflict with our controlling decision in the case of Gann v. Ry., 6 S. W. (2d) 39, 41, 319 Mo. 214; and (2) respondents' ruling that "while plaintiff is entitled to the benefit of defendant's evidence, he is not entitled to any such evidence that tends to contradict what plaintiff himself testified to," as applied to the facts here in evidence, is in conflict with our controlling decisions in Hale v. Railway, 287 Mo. 499, 518, 519, 230 S. W. 113; Anderson v. Davis, 314 Mo. 515, 552, 284 S. W. 439; Gould v. Railway, 315 Mo. 713, 722, 290 S. W. 135; Gann v. Railway, 6 S. W. (2d) 39, 44, 319 Mo. 214; Story v. People's Motorbus Co., 37 S. W. (2d) 898, 901, 327 Mo. 719.

It appears from respondents' opinion that plaintiff testified he approached the crossing up-grade from the west in second gear at a

speed of five miles an hour; that at a point from 20 to 25 feet from the first rail, you could not see anything north; that he could not have seen a car 50 feet up the track at that time; that he looked north for the first time when the front end of his truck was 15 feet away from the west or first rail; that he could not have had a view up the track prior to this time; that he then saw up the track for a distance of 150 feet and no car was in sight; that he proceeded along at the same speed continuing to look toward the north until the front end of his truck was within five feet of the first or west rail of the track and he, sitting in the truck, was eight or nine feet away from the track; that he then discovered the car approaching from the north coming around a curve at a distance of 200 feet from the crossing; that he saw the car as soon as he could have seen it; that he immediately threw the clutch into neutral, applied the foot brake and grabbed for the gear shift for the purpose of reversing the truck and backing away from the track; that the truck stopped with its front wheels over the west or first rail; that he did not remember anything that occurred after that as the car struck the truck at that time; that his motor did not stop; that he could not tell whether he was able to get the car shifted out of second gear or neutral or reversed; that moving at the rate of 5 miles per hour under the circumstances he could have stopped the truck within 6 or 7 feet.

The motorman testified "that he had just taken his hand off of the whistle cord (135 feet from the crossing) when the truck came into view, from behind the embankment, 23 feet west of the first or westbound rail; that he instantly reversed his car and set the air brake."

We quote as follows from respondents' ruling with respect to submission of the charge of failure to check speed:

"There is nothing in the record tending to show that the slackening of the speed of the car would have averted the collision. It will be borne in mind that plaintiff did not attempt to continue on across the track when he saw the car approaching but tried to reverse his truck and back away. However, there is not the slightest testimony tending to show how much time it would have required for plaintiff to back off of the track had he been given an opportunity to do so before the car struck his truck. As far as the testimony goes it merely shows that it was the intention of the plaintiff to reverse his truck and back away but that the collision occurred after he had thrown his clutch into neutral and applied his foot brake. He was unable to tell, even, whether or not he threw his gears into reverse or into neutral. It is quite apparent that there was no showing that the failure to slacken the speed of the car had anything to do with the collision, that is to say, that it was the proximate or contributed to the proximate cause of the

collision. Therefore the giving of plaintiff's instruction was erroneous." The following cases are cited in the opinion in support of this ruling: Bury v. St. L. & S. Fe. Ry. Co. (Mo. App.), 17 S. W. (2d) 549; State ex rel. v. Cox, 310 Mo. 367, 276 S. W. 869; DeMoss v. K. C. Rys. Co., 296 Mo. 526, 246 S. W. 566; Driscoll v. Wells (Mo.), 29 S. W. (2d) 50.

 It is our province in *certiorari* directed to one of the courts of appeals to determine whether in the application of rules of law to the facts stated in the opinion such court announced some conclusion of law contrary to the last previous ruling of this court upon the same or a similar state of facts. · [State ex rel. Calhoun v. Reynolds, 289 Mo. 506, 514, 515, 233 S. W. 483.]

The instant case and the cases above cited do not present the same or a similar state of fact. In the Bury case the Kansas City Court of Appeals held that "sounding of the whistle after plaintiff was unable to extricate herself would have done no good." Plaintiff's evidence in the case now before us was not that he was in a position from which he could not extricate himself, but to the effect that if he had been allowed time to perform the operation of shifting gears from second or neutral into reverse, which every one knows is a simple movement and quickly performed, the running motor would have almost instantly backed his truck clear of the west rail over which the front wheels had stopped. In the Cox case it was held that the only result naturally to be expected from assumed negligence in permitting a hole to remain in a screen attached to a boll extractor connected with a cotton gin was the clogging or damaging of the machinery, and that the act of a workman in extending his hand into the machine while it was in operation to remove a stick that had lodged there was the intervening cause of the injuries received, and negligence in permitting the machine to be out of repair was not the direct or proximate cause. The instant case presents no analogous state of facts. In the DeMoss case it was admitted that the automobile skidded against an approaching street car, and the skidding was held to be an independent cause of the collision. Plaintiff, in the case before us testified that he saw the interurban car when it was 200 feet north of the crossing and the front of his truck was 5 feet west of the west rail, and "that he immediately threw the clutch into neutral, applied the foot brake and grabbed for the gear shift for the purpose of reversing the truck and backing away from the track," and brought the truck to a stop "with its front wheels over the west or first rail." There was no evidence, even on the part of defendant, that the truck skidded against the approaching car. In the Driscoll case plaintiff claimed that he was struck by an auto-

mobile and thereafter by a street car, and it was his contention that when the automobile struck him he was thrown in front of the street car in time, under the humanitarian rule, for the motorman to have avoided striking him. The opinion states that according to plaintiff's testimony, which was the only evidence on the point, the automobile was only "its own length ahead of the street car when it struck him and knocked him down." The evidence most favorable to plaintiff was that the street car could not have been stopped within that distance, and with plaintiff in the helpless condition shown by his own testimony it is obvious that slackening the speed of the street car would not have enabled plaintiff to avoid being hit by it. So, in this case there is no controlling similarity to the facts before us.

On the other hand, there is such close similarity in the facts appearing in the case of Gann v. Ry., 6 S. W. (2d) 39, 41, 319 Mo. 214, and the facts shown by the opinion in this case that the ruling there announced is controlling authority on the point now under consideration. In the Gann case plaintiff testified that he saw the train 250 to 350 feet away, and "called out to the others and became excited and tried to get out. At that time the front of the automobile was within 2 to 6 feet of the track, which put the respondent, in the rear seat, 10 feet further back, or 12 to 18 feet therefrom. The driver continued forward, but when the front wheels hit the rough crossing the car bounced, the occupants flew in the air, and the engine went dead. The driver started up again and had got partly over when the train struck them. When the motor stalled the locomotive was probably 100 to 150 feet away." There was evidence that the locomotive struck the back wheel and fender of the automobile. According to the testimony of defendant's engineer he first saw the automobile 150 to 175 feet east of the grade crossing but did not conclude it was not going to stop until his locomotive was within 50 feet of the crossing, and he said that the automobile did not stall on the crossing. Sustaining the submission in that case of the charge of failure to slacken speed we said: "If the engineer had made only a service application of the air brakes 100 feet or more east of the track, after the automobile stopped, it could have got on across even though it did stall—at least we certainly cannot say as a matter of law such is not the fact." In the Gann case, as in this case, there was no opinion evidence as to the length of time that would have been required for the automobile to have been driven clear of the approaching train. According to the engineer he could have slowed up the train in 40 feet and stopped it within 300 to 400 feet on a service

application of the air brakes at 20 miles an hour, and "if the car had run forward a foot or so it would not have been hit."

According to the evidence in this case, if the truck had moved backward a very little if any greater distance than indicated in the Gann case it would not have been hit. The motorman testified that he "approached the crossing with his car under control having reduced his speed to 20 miles an hour," defendant contending that the shortest distance within which the car could have been stopped was 221 feet. But there was evidence that the motorman never slackened his speed until he hit the truck and then stopped his car within 86 feet. If the car was in fact proceeding at a slackened speed of 20 miles an hour it would have required about six seconds to traverse 175 feet, which is approximately the distance plaintiff's testimony places the car from his truck when the truck stopped in plain view with the two front wheels over the west rail, plaintiff having already grabbed for the gear shift of the running motor for the purpose of reversing the truck and backing away from the track. If the motorman had slackened the speed of his car to 10 miles an hour or less, as the evidence amply shows he could have done, plaintiff would have had twelve or more seconds to perform the simple and almost instantaneous act of backing the truck the short distance necessary to clear the approaching car. The circumstances embrace matters of such common knowledge that they speak for themselves without the aid of opinion evidence, and we think it cannot be said that there was no evidence from which the jury might not properly have found that the motorman's failure to slacken the speed of the car was a proximate cause of the collision. If in the Gann case we could not say as a matter of law that slackening of the speed of a railroad train, consisting of a locomotive, tender and "five steel cars 65 to 70 feet long" and moving at a rate of 20 miles an hour, made by only a service application of the air brakes about 100 feet from the point of collision, would not have prevented the collision, then surely the same ruling should control this case.

We now quote from the part of respondents' opinion holding that there was no evidence that a warning signal would have avoided the accident, including the part criticized by relator as in conflict with our controlling decisions:

"The physical facts show that the motorman could not have seen the truck any sooner than the plaintiff saw the car. Plaintiff admits the self-evident fact that he needed no warning after he saw the car. Therefore, the absence of warning was not the proximate cause of the collision nor did it contribute to such cause.

"However, plaintiff in his brief calls our attention to the testimony of the motorman who said that he saw the truck when it was

23 feet from the track, and to plaintiff's testimony that he was going at the rate of 5 miles per hour and that he could have stopped within 6 or 7 feet. Therefore, plaintiff concludes that had the motorman sounded a warning when the latter saw the truck 23 feet away from the track the collision would have been averted. There is ample testimony that there was no warning given of the approach of the car but in order to give any effect to the testimony of the motorman that he saw the truck 23 feet away from the track, and to the theory now advanced by plaintiff that he did not know of the approach of the car at that time and, therefore, a warning would have prevented the collision, it would be necessary to give the lie to approximately all of the plaintiff's testimony and to say that it was within the province of the jury to decide the case contrary to the theory, as to how the collision occurred, advanced by the plaintiff at the trial. . . .

"While plaintiff is entitled to the benefit of defendant's evidence when the court is passing upon a question of this kind (Gould v. Railroad Co., supra, Anderson v. Davis, supra; Gann v. Railroad Co., supra), he is not entitled to any such evidence that tends to contradict what plaintiff himself testifies to (Murray v. St. Louis Transit Co., 176 Mo. 183, 188, 190, 75 Mo. 611; Behen v. St. Louis Transit Co., 186 Mo. 430, 440, 441, 85 S. W. 346; Graefe v. Transit Co., 224 Mo. 232, 264, 265; Cogan v. Cass Ave. Ry. Co., 101 Mo. App. 179, 188, 189, 73 S. W. 738; Steele v. Railroad, 265 Mo. 97, 175 S. W. 177), unless there is something in the record to indicate that plaintiff made a mistake."

██ While it does not appear from facts detailed in the opinion "that the motorman could not have seen the truck any sooner than the plaintiff saw the car," yet the opinion recites that such was shown by the physical facts which recital in a proceeding such as this carries with it the presumption of due proof, and it does appear from the opinion that plaintiff testified he "discovered the car approaching from the north coming around a curve at a distance of 200 feet from the crossing" when his "truck was within five feet of the first or west rail of the track." Having thus affirmatively shown exactly where he was and where defendant's car was when he first saw it, plaintiff will not be permitted to avail himself of defendant's testimony wholly inconsistent therewith, to-wit, that the motorman saw his truck 23 feet west of the crossing, when the physical facts showed, as the opinion recites, that the motorman could not have seen the truck any sooner than plaintiff saw defendant's car. On the facts thus stated our decisions in Murray v. St. Louis Transit Co., 176 Mo. 183, 189, 75 S. W. 611, and other cases last above cited in respondents' opinion are controlling and

were properly applied, and respondents' conclusion that "the absence of warning was not the proximate cause of the collision" is not in conflict with our decisions in Hale v. Railway, 287 Mo. 499, 518, 519, 230 S. W. 113, and other cases cited by relator on this point.

Because of conflict above noted with our ruling on a similar state of facts in the Gann case, supra, respondents' opinion is quashed. All concur, except *Ragland, J.,* not sitting.