This is an action for damages for personal injuries. Plaintiff's automobile was struck by a train of the defendant Wabash Railroad Company while it was being operated over the tracks of the defendant, the two terminal companies. Plaintiff had a verdict for $20,000, which was reduced by remittitur to $10,000, and from judgment entered against defendants for $10,000, they have appealed.
Two charges of primary negligence were submitted to the jury, excessive speed and failure to give warning signals. The further charge of negligence under the humanitarian doctrine was also submitted. The accident occurred at Carrie Avenue crossing, an east and west street, in the city of St. Louis. The railway tracks ran north and south at this crossing. On the north side of Carrie Avenue and the west side of the railway tracks, there was a foundry building fronting *Page 575 
about 250 feet on Carrie Avenue and about 150 feet along the railroad tracks. The first track across the street on the west was a switch track, which ran into the southeast corner of the foundry. The next track was the west main line track. North of the switch track, between the foundry and the west main line track was a shed about twelve feet high. Its length was not stated. The foundry itself came within thirty feet of the west main line track, but the east side of this shed was only eight or nine feet from it. The main line tracks, north of the Carrie Avenue crossing, curved sharply to the west, and ran behind the shed and foundry. The pictures in the record show that these tracks began to curve almost immediately north of the crossing. North of this curve there were railroad yards, which could be seen from the crossing.
Plaintiff's evidence was that he was driving east on Carrie Avenue about ten o'clock at night, February 4, 1928; that there was a misty rain falling; that he stopped about fourteen feet west of the tracks, at which point he could not see over the shed to the north; that he looked both ways, and listened, and that he saw only an engine standing in the yards some distance to the north of the mainline tracks, with its headlight pointed south, lighting the yards and tracks north and east of the crossing. Plaintiff was in a "Model T" Ford touring car, the driver's seat of which was on the left (north) side. He had no curtain on that side. Plaintiff testified that he started up, keeping watch to the north all the time, traveling about four or five miles per hour; and that when his car got about two feet from the west main line track (the overhang of a train was two feet), while still continuing to look to the north, "a flash of light come on me and I went to stop and kept to watching and I seen the train, and I swung the wheel, and swung with the right with the train and that is the last I remember." When he saw the light of the engine it was from thirty-five to forty-five feet away. Plaintiff said that he stopped his car with the front wheels between the rails of this track and that it was at the same time struck by the train approaching from the north. One of plaintiff's witnesses said that his car "climbed up sideways up on the cow catcher." Plaintiff had other evidence to show that the train was traveling from twenty-five to thirty-five miles per hour and that no signals, by either whistle or bell, were sounded.
The engineer of the train testified that the train was traveling about seven or eight miles per hour around the curve; that Carrie Avenue could not be seen coming around the curve "until you get to about 100 feet of it;" and that when he first saw plaintiff's automobile it was standing still about four or five feet from the track. He estimated that the engine was about 100 feet from it when he saw it. He said that the automatic bell ringer was on, ringing the bell all the way from Delmar Avenue; that he also blew a number of short whistles when he saw plaintiff's car; that the automobile *Page 576 
remained standing still until after the engine passed it; that it suddenly started up and struck the third car of the train; and that he immediately made an emergency stop, stopping within one car length, or seventy feet, with the engine about 250 feet south of the crossing. He further testified that he looked back at the automobile as he passed it but saw no one in it; that as he went back to it, after stopping the train, he saw three men leaving it; and that he found the radiator "stone cold." Other members of the train crew corroborated the engineer's testimony that the whistle was blown and that the bell was ringing.
Defendants assign as error the instructions given at request of plaintiff upon the issues of primary negligence and contributory negligence, the instruction submitting the case upon the humanitarian doctrine, and that the verdict is excessive, even after remittitur.
[1] We think that defendants' contention that the evidence did not warrant submission of negligence under the humanitarian rule must be sustained. Under plaintiff's own positive statements, there was no humanitarian negligence case, by reason of failure to sound the whistle, because from them it affirmatively appears that plaintiff was not oblivious to the approach of the train after the engineer saw or could have seen him, but on the contrary, was, before it came from behind the shed, watching in that direction and was at all times, after it appeared, looking directly at it. Therefore, whistling then could not have prevented the collision. Likewise, failure to whistle then could not have been the proximate cause of plaintiff's injuries. The only purpose whistling could accomplish would be to give notice of the train's approach. Plaintiff's evidence is that he got this notice by seeing it as soon as the engineer could have imparted it to him by sound, after the engineer could have seen him. Plaintiff evidently did not consider that the evidence tended to show that the engineer had time to stop or sufficiently slacken the speed of the train, since his instruction predicated humanitarian negligence only upon failure to give a warning signal. Yet, under his testimony, nothing short of a complete stop before reaching the crossing would have prevented the train from striking his automobile, because it was only two feet from the track (within the overhang of the train) when the headlight flashed on him, and he had time only to stop it with its front wheels between the rails of the track. [2] According to plaintiff's statement, he was already in a place of danger when the engineer saw or could have seen him. He had time to do nothing thereafter except to stop, within a few feet, between the rails. He could only have escaped injury by going on across the track, backing off of it, or climbing out and abandoning his car and he did not, under his testimony, have time to do either. In making a case of primary negligence of such excessive speed, did he not eliminate the humanitarian rule even if he had shown obliviousness? [Freeman *Page 577 
v. Berberich, 332 Mo. 831, 60 S.W.2d 393; Payne v. Reed,332 Mo. 343, 59 S.W.2d 43.]
Whether that is true or not, plaintiff does claim to have been alert, in full possession of his senses, looking and carefully watching in the very direction from which the train came. This would tend to show that he was not guilty of contributory negligence, but would not tend to show negligence of the engineer under the humanitarian rule. He could have seen and, if his statement is true, must have seen the engineer's more powerful headlight before, or at least as soon as, the engineer could have seen his automobile or the glimmer of his "Model T" lights. Obliviousness is certainly a necessary element to making a humanitarian negligence case of failure to warn. Obliviousness was shown in all the cases based on failure to whistle, upon which plaintiff relies. [Logan v. C., B. Q. Railroad Co.,300 Mo. 611, 254 S.W. 705; Zumwalt v. C. A. Ry. Co. (Mo.), 266 S.W. 717; Allen v. C., B. Q. Railroad Co., 313 Mo. 42, 281 S.W. 737; Gould v. C., B. Q. Railroad Co., 315 Mo. 713, 290 S.W. 135; Chawkley v. Wabash Ry. Co., 317 Mo. 782, 297 S.W. 20; Herrell v. St. Louis-San Francisco Ry. Co., 322 Mo. 551, 18 S.W.2d 481.] [3] The humanitarian doctrine seizes upon the situation as it exists without regard to antecedent acts of either party. A warning could serve no purpose after plaintiff became aware of the approach of the train. [State ex rel. Weddle v. Trimble,331 Mo. 1, 52 S.W.2d 864; Driscoll v. Wells (Mo.), 29 S.W.2d 50; Clark v. A., T. S.F. Ry. Co., 319 Mo. 865, l.c. 879,6 S.W.2d 954; Clay v. Missouri Pacific Ry. Co. (Mo.), 5 S.W.2d 409; Wood v. Wells (Mo.), 270 S.W. 332; Peterson v. United Rys. Co., 270 Mo. 67, 192 S.W. 938; Sites v. Knott, 197 Mo. 684, 96 S.W. 206, Mockowik v. K.C., St. J. C., B. Railroad Co.,196 Mo. 550, 94 S.W. 256; Hutchinson v. Mo. Pac. Ry. Co., 195 Mo. 546, 93 S.W. 931; Murray v. St. Louis Transit Co., 176 Mo. 183, 75 S.W. 611; Bury v. St. Louis S.F. Ry. Co., 223 Mo. App. 483,17 S.W.2d 549.] On such a dark, rainy night as plaintiff described, it is apparent from the physical facts that the engineer could not have seen plaintiff's automobile until the engine rounded the curve enough so that its headlight could throw its light directly upon the crossing. Plaintiff came out from behind a shed eight feet from the track upon which the train was approaching and was only two feet from it when the light flashed on him. He says that the train was then only thirty-five to forty-five feet away, coming at twenty-five to thirty-five miles per hour. Failure to whistle after the engineer could have seen plaintiff could not, therefore, have been the proximate cause of the accident because plaintiff must have then seen the train. Whistling before that time might have averted the accident but failure to do so would be primary and not humanitarian negligence.
[4] Plaintiff, however, argues that he can make a humanitarian case from the engineer's testimony that he saw plaintiff's automobile *Page 578 
(standing still five feet from the track) when he was about 100 feet from it and that the train was traveling only seven or eight miles per hour. Even that testimony does not show obliviousness, and plaintiff's statements show that, regardless of the distance at which the engineer might have seen him, he was not then or thereafter oblivious and could not thereafter have received any information as to the approach of the train which he did get by seeing it. Plaintiff's case cannot be aided by such testimony for the further reason that his testimony is that none of the engineer's statements (above noted) were true. This court so ruled in State ex rel. Weddle v. Trimble, 331 Mo. 1, 52 S.W.2d l.c. 867, saying: "While plaintiff is entitled to the benefit of defendant's evidence . . . he is not entitled to any such evidence that tends to contradict what plaintiff himself testified to (citing cases), unless there is something in the record to indicate that plaintiff made a mistake" and that "having thus affirmatively shown exactly where he was and where defendant's car (here train) was when he first saw it (here, also, its speed), plaintiff will not be permitted to avail himself of defendant's testimony wholly inconsistent therewith . . . when the physical facts showed . . . that the motorman (engineer) could not have seen the truck any sooner than the plaintiff saw defendant's car (train)." For further discussion of this rule see Steele v. Kansas City Southern Ry. Co., 265 Mo. 97, 175 S.W. 177; Monroe v. C. A. Ry. Co., 297 Mo. 633,249 S.W. 644; Gann v. C., R.I. P. Ry. Co., 319 Mo. 214, 6 S.W.2d 39; Anderson v. Davis, 314 Mo. 515, 284 S.W. 439 (in this case and the Gann case, the facts shown by either plaintiff's or defendants' evidence would make a humanitarian case); Graefe v. St. Louis Transit Co., 224 Mo. 232, 123 S.W. 835; Behem v. St. Louis Transit Co., 186 Mo. 430, 85 S.W. 346; Murray v. St. Louis Transit Co., 176 Mo. 183, 75 S.W. 611.
[5] Defendants do not say that there was not sufficient evidence to make a case of primary negligence based on failure to warn. They do contend that the evidence was insufficient to show that excessive speed was the proximate cause of plaintiff's injury. We hold that there was a case for the jury on this issue. "Negligent speed at common law is dependent upon all the surrounding circumstances," and, although warning signals are given, where a railroad crossing is dangerous, the company also "owes the additional duty to such travelers to pass such crossing at a reasonable rate of speed, proportioned to the danger." [Herrell v. St. Louis-San Francisco Ry. Co., 322 Mo. 551,18 S.W.2d 481; see, also, Toeneboehn v. St. Louis-San Francisco Ry. Co., 317 Mo. 1096, 298 S.W. 795; Ward v. Mo. Pac. Ry. Co.,311 Mo. 92, 277 S.W. 908; for a discussion of what is a dangerous crossing see Homan v. Mo. Pac. Ry. Co., 334 Mo. 61,64 S.W.2d 617.] What is a proximate cause is ordinarily a jury question. [Davis v. Wolfe, 263 U.S. 239, 44 Sup. Ct. 64, 68 L.Ed. 284, affirming Wolfe v. Payne, 294 Mo. 170, 241 S.W. 915; C. N.W. *Page 579 
Ry. Co. v. Struthers, 52 F.2d 88; Clay v. Mo. Pac. Ry. Co. (Mo.), 5 S.W.2d 409; Treadway v. United Railways Co.,300 Mo. 156, 253 S.W. 1037; Brown v. C., R.I. P. Ry. Co. (Mo.), 252 S.W. 55; Hall v. St. Louis-San Francisco Ry. Co. (Mo.), 240 S.W. 175; Johnson v. Wabash Ry. Co., 259 Mo. 534, 168 S.W. 713.] "Causal connection, it is true, must be proved by the evidence, as a fact, and not be left to mere speculation and conjecture. This rule, however, does not require that there must be direct proof of the fact itself. This would often be impossible. It is sufficient if the facts proved are of such a nature and are so connected and related to each other, that the conclusion therefrom may be fairly inferred." [Frese v. Wells (Mo.), 40 S.W.2d 652; see, also, Dyer v. Sutherland Building Contracting Co., 321 Mo. 1015, 13 S.W.2d 1056; Messing v. Judge Dolph Drug Co., 322 Mo. 901, 18 S.W.2d 408; Dakan v. G.W. Chase 
Son Mercantile Co., 197 Mo. 238, 94 S.W. 944; Settle v. St. Louis-San Francisco Railroad Co., 127 Mo. 336, 30 S.W. 125.]
Here, according to plaintiff's evidence, we have a railroad track curving sharply around a large building with a shed only eight feet from the track; a much traveled, unprotected crossing in a great city which could not be seen even in the daytime until within between 100 to 150 feet of it; a train running on a dark, rainy night at a speed estimated at as high as thirty-five miles per hour; and a situation in which only one second more time might have been sufficient for plaintiff either to have gone on across the track or to have backed away from it. It does not conclusively appear from these facts that there was no causal connection between the speed and plaintiff's injury or that, under the circumstances, the collision would have occurred at a lower rate of speed. On the contrary, these facts with the reasonable inferences which might be drawn therefrom are sufficient to support a finding that the speed was excessive under the circumstances and that it was a proximate cause of plaintiff's injuries.
Defendants also criticize plaintiff's instruction submitting the charge of excessive speed on the ground that it was too indefinite, that it did not predicate recovery upon any definite state of facts, but permitted the jury to allow a recovery upon speculation and conjecture. This part of the instruction is rather general in its terms, and does not require a finding of the facts in evidence which would tend to show that the speed was excessive (except that the street was much traveled). On retrial it should be redrawn to obviate these objections.
The judgment is reversed and the cause remanded. Ferguson andSturgis, CC., concur.