CARLTON R. BENTON, ADMINISTRATOR OF THE ESTATE OF EUDORA LILLY, RESPONDENT, v. GUY A. THOMPSON, TRUSTEE OF THE MISSOURI PACIFIC RAILROAD COMPANY, A CORPORATION, APPELLANT.—156 S. W. (2d) 739.

Kansas City Court of Appeals. November 3, 1941.

*Thos. J. Cole, L. J. Bishop* and *D. C. Chastain* for appellant.

*Patterson, Chastain & Smith* of counsel.

*Cowgill & Popham, Sam Mandell* and *Crouch & Crouch* for respondent.

. BLAND, J.—This ·is an action for damages for wrongful death. There was a verdict and judgment in favor of plaintiff in the sum of $5000, and defendant has appealed.

Deceased was killed while riding in an automobile being driven by her daughter, Mrs. Adams, when it was struck by a train being operated by the defendant. The collision occurred where defendant's railroad tracks cross 23rd Street Trafficway at grade in the City of Independence. The railroad tracks, at the point in question, run north and south. 23rd Street Trafficway runs east and west, is sixty feet in width and is paved with concrete eighteen feet in width. There · are three tracks at the crossing. The automobile in which deceased was riding was traveling east on the Trafficway. As it approached the tracks the view of the train, which was approaching from the south down grade, was obstructed by a cut, a tree and a shed. The latter was located on the railroad right of way and was eight feet high. The shed was about 100 feet south of the trafficway and west of the track upon which the train was approaching. There was a flasher light standard on either side of the tracks at the crossing, the one on the east being eight feet east of the track and 6.8 feet north of the slab, and the one on the west being 8.4 feet west of the west rail and about 7.4 feet south of the slab. The flasher lights were operated electrically. When a train approaching the crossing is about 1000 to 1500 feet therefrom it strikes a contact starting the flashers in operation and they operate until the train has passed over the intersection. The flashers work in unison, that is, both sides operate at the same time.

Plaintiff's evidence tends to show that the flashers were not working before and at the time of the collision. Defendant's evidence is to the contrary.

The train involved in the collision, a northbound passenger train, was about a minute and a half late. The engineer had made a service application of the brakes so that he could have the train under control so as to stop, if necessary, at Independence Junction about 1500 feet north of the trafficway. There was evidence that the train had been proceeding at the rate of about 70 miles per hour but it was slowed down to a speed of 45 to 50 miles per hour at the time of the collision. There is no evidence of any ordinance regulating the speed of trains. The engineer did not see the automobile before it was struck; but the fireman testified that he was in his place on the left side of the engine cab; that the cab was 46 feet back of the pilot; that when he first saw the automobile it was 100 to 125 feet west on the highway; that the car was moving about 20 to 25 miles per hour, or about half as fast as the train; that when the car arrived at a point

about 50 feet from the track he realized it was not going to stop for the crossing; that at this time the pilot of the locomotive was about 100 feet from the crossing; that he called to the engineer and the latter applied his emergency brakes. The evidence shows that the engineer stopped about 1000 feet north of the crossing. Mrs. Adams was killed and her body was thrown from the car and was laying to the left of the tracks. Deceased was dead and was pinned in the automobile which was on fire.

Deceased was seventy-three years of age. She was "unusually strong for her age." She left surviving her one son and four daughters, all of whom are adults. She was a widow and since her widowhood she had resided in Independence with her daughter, Mrs. Adams. The collision occurred about 3:00 P. M. of October 28, 1938. Mrs. Adams was driving the automobile and deceased was riding in the rear seat of the car. The windows were down. Deceased's eyesight and hearing were good. There was evidence that the car was proceeding at the rate of ten or fifteen miles per hour, and at this speed it could have been stopped within eight or ten feet. There was no evidence in what distance it could have been stopped going at the rate of twenty-five miles per hour, or half the speed of the train. There was evidence on the part of the plaintiff not only that the flasher lights were not working, but that the bell was not rung, and that the whistle was not sounded until immediately preceding the collision. Defendant's evidence was to the contrary.

There was evidence that the crossing was a much traveled one; that 23rd Street Trafficway extended from Holmes Street in Kansas City to Independence and over the crossing in the latter city; that when it reaches Independence it becomes known as Alton Avenue, as well as 23rd Street Trafficway.

Defendant's witness, Matson, testified, that the trafficway, where it crosses the railroad tracks "is very heavily trafficed." The engineer of the train, testifying for the defendant, stated: "I knew there was a lot of traffic on it (23rd Street Trafficway). The crossing was in the City of Independence and from the photographs introduced in evidence we glean that there were many houses in the vicinity. One of defendant's exhibits is a photograph of a number of automobiles on the trafficway near the crossing.

The evidence shows that when one, approaching the railroad crossing in an automobile from the west upon 23rd Street Trafficway, reaches a point 200 feet from the center line of the track, upon which the train in question was approaching, he can see a train approaching from the south 110 feet from the crossing; that 175 feet from that point he can see a train 125 feet from the crossing; that 150 feet from that point he can see a train 145 feet from the crossing; that 125 feet from that point he can see a train 165 feet from the crossing; that 100 feet from that point he can see a train 180 feet from the crossing; that

75 feet from that point he can see a train 220 feet from the crossing; that 50 feet from that point he can see a train 350 feet from the crossing, and that 25 feet from that point he can see a train 800 feet from the crossing.

The case was submitted to the jury by plaintiff on defendant's negligence in failing to warn deceased and in operating the train at a dangerous and excessive rate of speed.

It is insisted by the defendant that the court erred in refusing to give his instruction in the nature of a demurrer to the evidence. In this connection defendant contends that deceased was guilty of contributory negligence as a matter of law. Defendant says that deceased was riding in an automobile which could have been stopped within eight or ten feet and when it was twenty-five feet from the track the train approaching from the south could have been seen 800 feet away by the occupants of the car; that at a point 150 feet from the track it was visible 145 feet away; that if deceased had been exercising ordinary care for her own safety she could have seen the train approaching in time to have warned the driver to stop.

There was evidence that the train was going fifty miles per hour and the automobile fifteen miles per hour at the time in question. If the train was going fifty miles per hour and the automobile was going fifteen miles per hour, a single calculation shows that the train could not have been seen by deceased until the automobile was somewhat closer than seventy-five feet from the track, for the train was going three and one-third times as fast as the car. Consequently, when the latter was seventy-five feet from the track the train was 250 feet away, but the evidence shows that the train would have had to have been within 220 feet of the crossing in order to have been seen by a person approaching the crossing and seventy-five feet away. As the automobile, going fifteen miles per hour traveled approximately twenty-two feet per second, not more than approximately two and three-elevenths seconds transpired between the time the train could have been seen and the time the automobile went upon the crossing. However, assuming, but not deciding, that this was sufficient time, as a matter of law, under all of the circumstances, for deceased to have notified her daughter in time for the latter to have stopped her car, there is no evidence, which the jury was compelled to believe, that deceased did not warn her daughter, and deceased is presumed to have been exercising ordinary care in the absence of credible (Downs v. Horton, 287 Mo. 414, 426, 427) testimony to the contrary. [Burge v. Railroad, 244 Mo., 76, 95.]

It is true that the fireman, testifying for the defendant, stated that when the automobile approached the crossing deceased and her daughter were engaged in conversation and that neither of them looked toward the track or paid any attention to the approaching train. There is no evidence contradicting this. In fact, the only other tes-

timony in the record bearing on what the occupants of the automobile were doing before it reached the track was that given by a witness for the plaintiff, who stated that he was working on the. trafficway about 800 feet west of the crossing when the automobile passed him; that he knew both of the occupants and "they were just riding along like they had no place to go at all and were in no hurry whatever and she (Mrs. Adams) made a motion with her hand like that at me as she passed."

In view of all of this, defendant says that the presumption of due care on the part of deceased cannot be indulged in because such presumption constitutes merely a procedural rule and can be applied only in the absence of evidence to the contrary. While the testimony of the fireman on this question was not contradicted, his testimony, in nearly every material instance, as to other matters, was contradicted, and had the jury believed his testimony on those matters, it could not have found in favor of plaintiff. Of course, the jury did not believe his testimony as to such matters. For instance, he testified that the bell was being rung by an automobile bell ringer as the train approached and went over the crossing; that the whistle was sounded a quarter of a mile south of the crossing; that he looked at the flasher lights and both of them were working perfectly, etc. If the jury, as a matter of law, were compelled to accept the fireman's testimony relating to the activities of the occupants of the automobile at the time it approached the crossing, then the presumption of due care on the part of deceased could not be indulged in. However, under all of the circumstances, we do not believe that the jury was compelled to believe this testimony. [See Gilpin v. Aetna Life Ins. Co., 132 S. W. (2d) 686; Downs v. Horton, *supra*; Newton Co. Bk. v. Cole, 282 S. W. 466. See, also, Thompson v. St. Louis-San F. Ry. Co., 69 S. W. (2d) 936, 946.]

We have examined State ex rel. Alton R. Co. v. Shain, 346 Mo. 681, and Zickefoose v. Thompson, 148 S. W. (2d) 784. In each of these cases a witness for the plaintiff testified as to what deceased was doing at the time of the collision and, of course, plaintiff vouched for the credibility of his own witnesses. We find the cases of Chawkley v. Wab. Ry. Co., 317 Mo. 782; Sullivan v. A. T. S. F. Ry. Co., 317 Mo. 996, and Burton v. Pryor, 198 S. W. 1117, cited by defendant, not to be in point.

It is insisted that the court erred in refusing to give defendant's Instruction No. 8, which told the jury that, if the flasher lights at the crossing were working at the time the automobile approached, then plaintiff was not entitled to recover. Undoubtedly, it was a question for the jury as to whether the flasher lights, if working, constituted sufficient warning under all of the circumstances. [Harrell v. St. Louis-San F. Ry. Co., 18 S. W. (2d) 481; Pentecost v. St. Louis Merchants' Bridge Term. R. R. Co., 66 S. W. (2d) 533.]

We have examined McKelvey v. Del. L. & W. R. Co., 300 N. Y. S. 1263, cited by the defendant and find, from a reading of the case, that apparently, the law in New York is to the effect that, where there is no ordinance regulating speed at a given point, a railroad company has the right, as a matter of law, to propel its trains over a highway at any rate of speed it chooses, where it gives a due and timely warning of the approach of the train. This is not the law in Missouri. [See cases last cited.]

Defendant insists that the court erred in giving plaintiff's Instruction "B." This instruction told the jury:

The Court instructs the jury if you believe from the evidence that said crossing in question was at said time greatly and heavily used by vehicular traffic and the public generally, and that under all the circumstances shown by the evidence it was an unusually dangerous crossing for such public use, if so, and that defendant did not by means other than by whistle give reasonably sufficient and timely warning of the approach of said train to said crossing, if so, and that said train was equipped with a steam whistle, if so, and if you further believe from the evidence that in the exercise of ordinary care it was the duty of the defendant under all the circumstances shown by the evidence to give reasonable warning of the approach of said train by said steam whistle, if you so find, and if you further find that defendant failed to use ordinary care so to do and was thereby negligent, if so, and that by reason thereof the occupants of said car were unwarned and did not timely know of the approach of said train, if so, and that as a direct result thereof Mrs. Lilly was fatally injured, if so, and that Mrs. Lilly was at all times herself in the exercise of ordinary care, if you so find, and that she died a widow and that the adults referred to in evidence are her only surviving children, if you so find, then your verdict must be for plaintiff."

It is claimed by the defendant that this instruction is inconsistent and confusing; that "to say that if the railroad did not other than by whistle sound a sufficient alarm implies that it did sound a sufficient warning;" that "the instruction is involved and complex and we do not believe that a jury could understand what is meant by it." The petition pleads as negligence, generally, a failure to warn. The instruction does not submit the matter in the general form pleaded, though it does submit a failure to warn *by any method*. It separates the failure to warn by whistle from the failure to warn by other means. This separation was made, no doubt, on account of the fact that, while plaintiff's evidence shows that no other warning than by whistle was given, the whistle, in fact, was sounded, but too late to be of any avail to the occupants of the automobile. The instruction, no doubt, was drawn in view of the decision of the Supreme Court in Blackwell v. Union Pac. R. Co., 331 Mo. 34, wherein an instruction of plaintiff was declared erroneous because it directed a verdict for plaintiff on

the sole ground that defendant negligently failed to *sound* any signal or warning, but did not require a finding that it did not give a warning by any other method, there being evidence that there were other methods by which a warning could have been given. We find the instruction is not subject to the criticisms mentioned above relative to it.

However, it is insisted that the instruction is erroneous for the reason that it allows the jury to determine whether the crossing was dangerous, when it should have set out facts which, in law, would render the crossing unusually dangerous. We find no merit in this contention. It was peculiarly within the province of the jury to determine whether this crossing, under all of the circumstances, was unusually dangerous. [Homan v. Mo. Pac. R. Co., 64 S. W. (2d) 617.] If the instruction had pointed out facts of circumstances from which plaintiff thought that the jury could have concluded that the crossing was unusually dangerous, it probably would have been subject to the complaint that it constituted a comment upon the evidence.

We have examined the case of Long v. Mild, 149 S. W. (2d) 853, cited by the defendant, and find it not in point.

However, it is said that the instruction allows recovery even though the bell were rung and the flasher lights were working if the jury did not think such warning was sufficient and defendant says that, at common law, such warnings are sufficient. While it is true that the instruction was broad enough to permit the jury to find that the flasher lights were working and the bell was being rung, if they concluded that these did not give sufficient warning under all of the circumstances, there was no error in leaving this matter to the judgment of the jury as, under all of the circumstances, it cannot be said, as a matter of law, that such warnings, if given were sufficient. [Harrell v. St. Louis-San F. Ry. Co., *supra*; Pentecost v. St. Louis Merchants Bridge Term. R. R. Co., *supra*.]

The instruction in the case at bar is not similar to that declared erroneous in Yoakum v. A. T. & S. Fe Ry. Co., 199 S. W. 263, cited by defendant.

It is insisted that the court erred in giving plaintiff's Instruction "C," reading as follows:

"The Court instructs the jury if you believe from the evidence that said crossing at the time in question was heavily and greatly used and traversed by large numbers of the public, and had heavy public vehicular traffic along 23rd Street thereof, and, that under all the conditions and physical surroundings and circumstances shown by the evidence the same was an unusually dangerous crossing for public use, if so, and if you further believe from the evidence that it was the duty of Defendant in the exercise of ordinary care, and under all the circumstances and for the reasonable safety of the public using 23rd Street to have operated said train at a slower

speed than the speed it was going as it neared the crossing, if so, and if you further believe from the evidence that defendant failed to use ordinary care in then and there operating said train at the speed it was traveling and negligently, if so, operated same at said time as it neared said crossing at dangerous and excessive speed, having due regard to all the circumstances and conditions, as shown by the evidence, if you so find, and that said collision and the death of Mrs. Lilly resulted from the aforesaid negligence, if any, of Defendant, if you so find, and that Mrs. Lilly at all times used ordinary care for her own safety, if you so find, and died a widow and that the adults referred to in the evidence are her only surviving children, if so, then your verdict must be for plaintiff.''

It is claimed that the evidence in this case does not show a dangerous crossing so as to authorize an instruction on this point. In this connection defendant cites Duncan v. Chi. B. & Q. R. Co., 149 S. W. (2d) 920, and McGee v. Railroad, 214 Mo. 530. These cases both involve ordinary crossings in the country between stations and away from congested population. The crossing involved in the case at bar was one located in a city. It was heavily traveled and the view obstructed in a material manner. The flasher lights were not working. The cases cited by defendant are not in point. [See Herrell v. St. Louis-San F. Ry. Co., *supra*; Pentecost v. St. Louis Merchants Bridge Terminal R. R. Co., *supra*; Homan v. Mo. Pac. R. Co., *supra*.] The case of Duncan v. Chi. B. & Q. R. Co., *supra*, l. c. 923, cited by defendant, distinguishes a country crossing from one like that involved in the case at bar. We have examined the other cases cited by defendant on this point. So. Pac. v. Stephens, 24 Fed. (2d) 182, involved a country crossing. In Central R. Co. of N. J. v. Hudson, 209 Fed. 176, it was said that the trial court did not properly instruct the jury relative to the presence of safety gates. We find nothing in that case to aid the defendant here.

It is contended that if there was any negligence in this case on defendant's part it was not the rate of speed of the train, but failure of the flasher lights to work. Defendant would have us, as a matter of law, so declare. This we cannot do under the authorities we have cited. As was said in Pentecost v. R. R. Co., *supra*, l. c. 536: " 'Negligent speed at common law is dependent upon all the surrounding circumstances,' and, although warning signals are given, where a railroad crossing is dangerous, the company also 'owes the additional duty to such travelers to pass such crossing at a reasonable rate of speed, proportioned to the danger.' [Herrell v. St. Louis-San Francisco Ry. Co., 322 Mo. 551, 18 S. W. (2d) 481, 484; see, also, Toeneboehn v. St. Louis-San Francisco Ry. Co., 317 Mo. 1096, 298 S. W. 795; Ward v. Mo. Pac. Ry. Co., 311 Mo. 92, 277 S. W. 908.]''

It is claimed that the court erred in giving Instruction ''D'' on behalf of plaintiff. This instruction reads as follows:

"The Court instructs the jury that defendant has set up in this case the plea or defense of contributory negligence, charging that Eudora Lilly failed to use ordinary care for her own safety and thereby directly contributed to her own death, as submitted in other instructions. You are instructed that the law does not place the burden of disproving this charge or defense on the plaintiff in this case. The burden of proof on the issue or defense of contributory negligence is in law on the defendant, and the law requires defendant to establish such defense by the greater weight of all the credible evidence in the case to the reasonable satisfaction of the jury; and if defendant has not so met this burden of proof, and if upon all the credible evidence in the case, fairly considered, you do not find that Eudora Lilly was herself guilty of contributory negligence, directly contributing to her death, than the said defense of contributory negligence must fail and your verdict on this issue will be for plaintiff and against defendant."

It is claimed that there is no burden of proof upon defendant but that such burden is always on the plaintiff and never shifts and further, that the instruction leads the jury to believe that a separate finding on the issue of contributory negligence was to be made by it and that such was the only finding it was required to make. We find no reversible error in the giving of this instruction. [Johnston v. City of St. Louis, 138 S. W. (2d) 666.]

It is insisted that the court erred in giving plaintiff's Instruction "E," which reads as follows:

"The Court further instructs the jury if you believe from the evidence that Eudora Lilly at all times herself used ordinary care and was not driving the car in question, and was permissively riding therein with the driver thereof and had no right of control over the said car and the operation thereof, then any negligence, if there was any, on the part of the driver, Mrs. Adams, would not in law be chargeable or imputable to Mrs. Lilly, and if defendant was negligent, as set forth in the instruction submitting alleged negligence of defendant, then negligence also, if any, on the part of Mrs. Adams, even though mentioned it contributed to the death and combined with the hereinabove negligence, if any, of defendant in producing said death, would not constitute a defense in this case."

It is claimed that the instruction was erroneous because it excused deceased from maintaining a lookout and from using ordinary care, on approaching the railroad crossing, to warn the driver of the danger. On behalf of the defendant, the court gave the jury the following instruction:

"The Court instructs the jury that if you find and believe from the evidence that the deceased, in the exercise of ordinary care for her own safety, could have observed and seen the approach of the train in time thereafter to have warned the driver of the automobile of the approach of said train and in time for the driver to have so handled

the automobile as to have prevented the collision, then you are instructed that the plaintiff is not entitled to recover in this action.".

We think under all of the circumstances, that the jury was fully instructed in reference to the matter.

It is insisted that the court erred in giving plaintiff's Instruction "G," which reads as follows:

"The Court instructs the jury that if your verdict is for plaintiff you will assess a penalty of not less than Two Thousand ($2000) Dollars and not more than Ten Thousand ($10,000) Dollars, and, in fixing the amount, you may consider the mitigating and aggravating circumstances, if any, attendant upon the negligence, if any, as submitted in the instructions herein, and causing the death of Eudora Lilly, if you find it was so caused, and your verdict, if for plaintiff, will in your discretion be in such sum, within the aforesaid restrictions, as you deem proper and meet and just."

In this connection defendant says that its negligence, if any was the failure to warn by flasher lights, which was not negligence allowing a recovery of the statutory penalty. From what we have said there is no merit in this contention. It is also contended that the instruction allows the jury, in fixing the amount of the verdict, to consider mitigating and aggravating circumstances, thus permitting it to pass upon a question of law. However, we find that defendant in his Instruction No. 17, on the measure of damages, makes use of the same terms in the same manner.

On behalf of defendant the court gave Instruction No. 18, reading as follows:

"The Court instructs the jury that if you cannot find a verdict in this case against the defendant upon the alleged failure of the flasher lights to operate."

Defendant contends that the court erred in giving plaintiff's Instruction "H," reading as follows:

"The Court further instructs the jury regarding Instruction No. 18 that while you are advised therein that the alleged failure of the flasher lights to work on the occasion in question is not submitted to you as a ground of recovery, you are also instructed that the Court did not and does not withdraw from your consideration as jurors any of the evidence admitted before you by the Court touching said matter. Such evidence was offered and was permitted by the Court for any bearing, if any, it may have on the claim or defense that Mrs. Adams and Mrs. Lilly were negligent, and in determining that issue you may consider that evidence together with all the evidence and all the circumstances shown by the evidence as a whole in this case."

In this connection defendant said: "that by Instruction H the court told the jury that they could consider the question of whether the flasher lights were working only in connection with the defense of contributory negligence, whereas the jury had a right to con-

clude that the flasher lights were a sufficient warning and so there was no need to blow the whistle, and since the court instructed the jury that a verdict against the defendant could not be based upon the failure of the flasher lights to operate, the jury would conclude that the flasher lights could not constitute a sufficient warning under Instruction B.''

The matter submitted in plaintiff's Instruction ''H'' is based upon the theory that the flasher lights were not working. Defendant was privileged to offer an instruction, if properly worded, submitting to the jury the question as to whether the flasher lights, if in operation, constituted a sufficient warning. This he failed to do, but was content to ask the court to instruct the jury by offering his Instruction No. 8 that, as a matter of law, if they were working, plaintiff could not recover. We cannot convict the trial court of any error in the giving of plaintiff's Instruction ''H'' on the grounds assigned by the defendant.

It is insisted that the instruction in the nature of a demurrer to the evidence should have been given because there was no proof of the appointment of an administrator and that the appointment was denied under defendant's general denial. There is no merit in this contention. [Katz v. North K. C. Devel. Co., 14 S. W. (2d) 701; Baxter v. St. Louis Transit Co., 198 Mo. 1.] We have examined Carpenter v. Kurn, 345 Mo. 877, cited by defendant, and find it not in point.

It is insisted that the verdict is excessive. The facts in reference to this contention already have been stated. We feel that the amount is not so great as to authorize us in interfering with it.

The judgment is affirmed. All concur.